**Willie Lloyd TURNER, Petitioner,**

v.

**David A. WILLIAMS, Warden Powhatan Correctional Center, Respondent.**

**Civ. A. No. 91–1846–AM.**

United States District Court,
E.D. Virginia,
Alexandria Division.

Feb. 1, 1993.

Walter J. Walvick, Washington, DC, David R. Addis, Vienna, VA, for petitioner.

Robert H. Anderson, III, Asst. Atty. Gen., Richmond, VA, for respondent.

## MEMORANDUM OPINION

CACHERIS, Chief Judge.

This matter is before the Court on Respondent David A. Williams' motion to dismiss Petitioner Willie Lloyd Turner's 28 U.S.C. § 2254 (1988) petition for a writ of habeas corpus. Respondent's motion is brought pursuant to Federal Rules of Civil Procedure 12(b)(6), or in the alternative Rule 56(b). For reasons set forth below, Respondent's motion is GRANTED, judgment entered in favor of Respondent, and the petition for habeas corpus dismissed with prejudice.[1]

### I. BACKGROUND.

Over fourteen years ago, at approximately 11:30 a.m. on July 12, 1978,[2] Petitioner Willie Lloyd Turner entered Smith Jewelers store located in the City of Franklin, Virginia, which was owned and operated by W. Jack Smith, Jr. As Turner entered the

---

1. Petitioner has filed three additional motions, including a Motion for Evidentiary Hearing, Motion for Discovery and Requests for Production of Documents, and Motion for Funds for a Clinical Neuropsychiatric Examination Pursuant to 18 U.S.C. § 3006A(a) & (e) (1992). Because of the Court's disposition of Respondent's Motion to Dismiss, these motions are dismissed as moot.

2. The recitation of facts is a compilation of testimony given at the original trial, which was reintroduced at the second resentencing trial held before the Honorable James C. Godwin. *See Commonwealth v. Turner,* No. 870554, Tr. at 250–324 (Southampton County Cir.Ct. January 7–9 & 12, 1987) [hereinafter "Transcript I"] (testimonies given by Judith R. Cosby, a customer at the store during the attempted robbery; Mary J. Huffman, a store clerk working at the time of the attempted robbery; Dr. Faruk Presswalla, Commonwealth of Virginia Deputy Chief Medical Examiner who examined the body of W. Jack Smith, Jr.; and Alan D. Bain, Jr., the police officer initially responding to the silent alarm).

store, he carried with him a sawed-off shotgun concealed under a green towel. Turner walked to the back of the store, and without saying a word motioned toward Smith with his gun, causing Smith to begin loading money and jewelry into a jewelry bag. While he was stuffing the jewelry bag, Smith was inconspicuously able to activate the store's silent alarm. In almost immediate response to the alarm, Police Officer Alan D. Bain, Jr., entered the store, and informed Smith that his alarm had been triggered. Before Officer Bain could observe the situation, Turner placed his shotgun next to Officer Bain's head and ordered Bain to remove his service revolver, which Turner then confiscated. Turner then ordered Smith to turn off the alarm and continue loading bags with jewelry. After fidgeting with the revolver for a few moments, Turner fired the gun into the back wall of the store, yelling that he did not want any more police contacted.

At this point, Smith started to step out from behind the counter. Turner looked at him for a moment, and then shot Smith in the head with the revolver, causing Smith to yell, slump down, and fall to the floor. The bullet passed through Smith's scalp, and although not fatal, it caused bleeding and bruising to the brain surface. The shot knocked Smith unconscious, where he remained crumpled behind the counter, bleeding from his head, and emitting a faint gurgling noise.

Turner backed up, and according to Judith R. Cosby, a customer in the store at the time, declared "I'm going to kill that nig[g]er for snitching on me."[3] Turner then reached over the counter, rapidly firing two successive close range pistol shots into the left side of the unconscious Smith's

chest. The shots caused Smith's body to jump at the force of impact, with one of the bullets penetrating his heart, food and wind pipes, finally lodging in his spine. The other bullet passed through his chest and lung, exiting out his back, so that the flattened slug was later found loose in his shirt. There was no more noise or motion from Smith following these shots. The medical examiner testified that the shots to Smith's chest were the cause of death, and that either shot alone would have been sufficient to kill him. After Smith's body lay lifeless, Officer Bain was able to regain control of his weapon, and subsequently subdue Turner.

Turner was convicted of murdering Smith on December 4, 1979, and on December 6, 1979, a jury sentenced him to death, which the Supreme Court of Virginia approved on appeal. *Turner v. Commonwealth*, 221 Va. 513, 273 S.E.2d 36 (1980) (*Turner I*), *cert. denied sub nom. Turner v. Virginia*, 451 U.S. 1011, 101 S.Ct. 2347, 68 L.Ed.2d 863 (1981). On April 30, 1986, the United States Supreme Court upheld Turner's conviction, but reversed his death sentence because of the trial court's failure to question prospective jurors about possible bias resulting from the fact that Turner was black and his victim was white. *Turner v. Murray*, 476 U.S. 28, 106 S.Ct. 1683, 90 L.Ed.2d 27 (1986).

The case was then returned to the Circuit Court for the County of Southampton, Virginia, the Honorable James C. Godwin presiding, for a new jury trial on the sentence, which took place on January 7–9, and 12, 1987. One of the decisions to be made at this point by court-appointed attorney J. Lloyd Snook and assisting counsel Thomas L. Woodward, Jr.,[4] was whether to tell the

---

**3.** *Transcript I,* supra note 2, at 258. Officer Bain reports the statement as having been "I'm going to kill this nigger squealer." *Id.* at 306. As Smith was white, there is no readily apparent explanation for Turner's use of this racial epithet, nor is one necessary. The quote is given here simply to display Turner's reason, given in his own words, for ending Mr. Smith's life.

**4.** Turner was represented in these proceedings primarily by J. Lloyd Snook, who had been Turner's counsel since his first appeal to the Virginia Supreme Court. Prior to that, Thomas

L. Woodward, Jr. had represented Turner, and he continued thereafter to act in a secondary role as co-counsel. It is the actions of these attorneys upon which Petitioner bases his current claims of ineffective assistance of counsel. In his May 23, 1990, letter, Judge Godwin makes the following statements concerning these counsel:

Both attorneys were extremely well qualified. Mr. Snook had represented Turner for some seven years and is one of the most experienced criminal lawyers in Virginia. In

jury that Turner previously had received a death sentence.[5]

Snook had been counseled by other death penalty experts against allowing the jury to know of the previous sentence. The difficulty with that advice was that part of the mitigating evidence he planned to introduce concerned Turner's actions during a 1984 escape attempt by himself and other death row inmates at Mecklenburg prison. Judge Godwin had indicated he would not sever any portion of the evidence regarding the fact that Turner was on death row, and that all such rebuttal evidence would be admitted. *See Transcript I*, supra note 2, at 21–24. Snook also felt the jury would be able to figure out on its own that Turner previously had received the death penalty, knowing that Turner had already been convicted, that the offense had occurred some ten years before, and that the only issue before them was whether to impose a life or death sentence. *Transcript II*, supra note 5, at 76. As Prosecutor Grizzard observed when discussing the issue with Snook and Judge Godwin, "any halfway intelligent jury knows that a man that's sentenced to life in the first instance is not appealing the life sentence so that he can get the possibility of a death penalty." *Turner v. Commonwealth*, No. 870554, Tr. at 24 (Southampton County Cir.Ct. Nov. 12, 1986). Judge Godwin agreed that "[t]hat should be obvious very quickly." *Id.*

Based on Judge Godwin's comments, as well as his feeling that the jury would realize on its own that there had been a previous death sentence, Snook determined that his best course of action was to have the court inform jurors of the prior death sentence during voir dire. This allowed Snook to gauge any potential resulting prejudice upon the part of individual jurors, as well as to avoid the appearance of having held back damaging evidence once the prior death sentence became apparent.

The next major trial decision for Snook came at the end of the Commonwealth's case in chief.[6] After the prosecution rested, Snook felt the Commonwealth had held back about eighty percent of its evidence, saving the most devastating evidence for use in rebuttal to the defendant's case. Snook also was concerned that mitigating evidence on Turner's character ultimately showed more bad than good, and that all of this damaging character evidence would come in if he tried to introduce what relatively limited evidence there was of good character. Finally, Snook felt the jury had been bored by the government's case, so that based on all these factors, putting on mitigating evidence would not have placed the defendant in a better position than the one in which he stood currently. Thus, Snook decided to rest the defendant's case without putting on a defense. Woodward, who was personally acquainted with the prosecutor, concurred. Woodward had tried many cases against prosecutor Grizzard, and he knew Grizzard had a habit of

---

addition, he has handled more death penalty litigation than any other private attorney in Virginia. He is noted as one of the experts in the field of capital cases.

Mr. Woodward was also a highly experienced criminal lawyer. His practice for 18 years had been predominantly representing criminal defendants from the same or similar backgrounds as Turner. He was undoubtedly one of the most effective criminal lawyers in Eastern Virginia. Mr. Woodward not only knew Turner and his background thoroughly, he also was well acquainted with Mr. Richard C. Grizzard, Commonwealth's Attorney for Southampton County.

Letter from Judge James C. Godwin, Judge for the Southampton County Circuit Court of Virginia, to Walter J. Walvick, habeas counsel for the Petitioner, and Robert H. Anderson, Assistant

Attorney General for the Commonwealth of Virginia, at 2 (May 23, 1990) (*Turner v. Williams*, No. 901335, R. at 1245–49 (Southampton County Cir.Ct. Sept. 11–13, 1989)) [hereinafter *Letter Order*].

5. Mr. Snook's reasoning on whether to tell the jury about the prior death sentence is taken from his testimony on that matter at the state collateral hearing. *See Turner v. Williams*, No. 901335, Tr. at 76–85 (Southampton County Cir. Ct. Sept. 11–13, 1989) [hereinafter "*Transcript II*"].

6. Mr. Snook's reasoning on whether to put on a defense is taken from his testimony on that matter at the state collateral hearing. *See Transcript II*, supra note 5, at 141–62. Mr. Woodward's concurring views can be found later in the same hearing. *See id.* at 380–94.

holding back damaging evidence for use in rebuttal.

On January 12, 1987, this second jury returned a verdict again fixing the sentence at death, based solely upon the "vileness" predicate established by Va.Code Ann. § 19.2–264.2 (Michie 1990).[7] This sentence was again upheld on appeal to the Virginia Supreme Court. *Turner v. Commonwealth*, 234 Va. 543, 364 S.E.2d 483 (Va.) (*Turner II*), *cert. denied*, 486 U.S. 1017, 108 S.Ct. 1756, 100 L.Ed.2d 218 (1988).[8]

The collateral review process began anew when Petitioner filed for a writ of habeas corpus with the Circuit Court for the County of Southampton, based upon alleged ineffective assistance of counsel. An evidentiary hearing on this issue was held before Judge Godwin on September 11–13, 1989. All other claims were dismissed without an evidentiary hearing. On May 23, 1990, Judge Godwin issued a five-page letter order finding nothing to substantiate Turner's claim, and adopting verbatim the Attorney General's proposed findings of fact.[9] On July 5, 1990, the letter order was formalized in an order dismissing Turner's petition. On April 30, 1991, the Supreme Court of Virginia dismissed Turner's appeal of the lower court's

decision. On December 10, 1991, Turner filed this petition, which is his first petition for habeas corpus in federal court with respect to the January 12, 1987 death sentence. The Commonwealth has moved for dismissal of the petition pursuant to Federal Rules of Civil Procedure 12(b)(6) and 56.

## II. APPLICABLE LEGAL STANDARD.

The respondent has styled this alternatively as a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) or for summary judgment under Rule 56. Because a considerable record has already been developed as a result of prior proceedings in this matter, it is more appropriate for the Court to treat this as a motion for summary judgment, as provided for in Rule 12(b).

Summary judgment is appropriate only if " 'the pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Baber v. Hospital Corp. of America*, 977 F.2d 872, 874 (4th Cir.1992); Fed.R.Civ.P. 56(c). "A district

---

**7.** In other words, the second death sentence was not based upon a finding of "future dangerousness," even though the court had given an instruction on the dangerousness predicate, and Turner had a lengthy history of serious, violent crimes.

Petitioner's Pre–Sentence Report, *Commonwealth v. Turner*, No. 870554, R. at 44–45 (Southampton County Cir.Ct. Jan. 7–9, 12, 1987) [hereinafter *Record*] (filed with the record on Mar. 16, 1987), reveals the following convictions at the time the second death sentence was imposed (Turner was born December 4, 1945): 4/24/63 No Operator's License; 8/13/63 Contributing to the Delinquency of a Minor; 8/13/63 Breaking and Entering; 10/30/63 Escape from Beaumont Industrial School for Boys; 8/22/64 Disorderly Conduct in Stovall's Cafe; 12/7/64 Vagrancy; 3/23/65 Unlawful Concealment of Merchandise Valued at less than $50.00; 8/15/65 Petit Larceny; 12/11/67 Drunk in Public; 12/12/67 Petit Larceny; 12/15/68 Assault & Battery, Illegal Possession of [a] Dangerous Weapon; 5/16/69 Assault With a Deadly Weapon; 3/14/70 Carry[ing] Concealed Weapon (Pis-

tol); 3/14/70 Malicious Maiming; 9/2/70 Violation of National Firearms Act; 6/4/71 Unlawful Wounding; 2/19/74 Murder, Second Degree; 1/29/80 Escape; 2/1/80 Use of a Pistol to Commit Murder; and 2/1/80 Using a Sawed-off Shotgun in Commission of a Robbery.

The fact that the jury did not sentence him to death based on a finding of future dangerousness, despite Turner's history of criminal violence, supports Snook's decision to rest without putting on a defense. At the first trial, although it is not entirely clear because of the jury's failure to properly complete the verdict form, it appears that the first jury imposed death on the basis of both prongs, namely a finding of "vileness" and "dangerousness." *See Turner v. Commonwealth*, 221 Va. 513, 273 S.E.2d 36, 44–45 & n. 12 (1980).

**8.** Thus, the petitioner's appeal of his death sentence became final for present purposes upon the United States Supreme Court's denial of certiorari on May 16, 1988.

**9.** *See Letter Order*, supra note 4.

court must grant summary judgment if, after an adequate time for discovery, a party fails to make a showing sufficient to establish the existence of an essential element of that party's case." *Baber*, 977 F.2d at 874 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)).

In summary judgment proceedings, the moving party must demonstrate absence of a genuine issue of material fact. *Baber*, 977 F.2d at 874. Once the moving party has met its burden, the nonmoving party must come forward with some evidence beyond mere allegations contained in the pleadings to show there is a genuine issue for trial. *Id.* at 874–75. "While this does not require the non-moving party to submit evidence in a form that would be admissible at trial ... 'unsupported speculation is not sufficient to defeat a summary judgment motion.'" *Id.* at 875 (quoting *Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir.1987)).

"The mere existence of a scintilla of evidence in support of the [party's] position will be insufficient; there must be evidence on which the jury could reasonably find for th[at] [party]." *Anderson*, 106 S.Ct. at 2512, 106 S.Ct. at 252. Finally, "[i]n reviewing the evidence submitted by the parties ..., [the court] must view all evidence in the light most favorable to the non-moving party." *Baber*, 977 F.2d at 875.

## III. SUMMARY OF THE BASES FOR PETITIONER'S CLAIM THAT HE IS ENTITLED TO A WRIT OF HABEAS CORPUS.

A. That he was denied effective assistance of counsel in violation of his rights under the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution because his attorneys:

1) permitted prospective jurors to know about his prior death sentence (discussed *infra* at 1429);

2) improperly decided not to put on for mitigation purposes evidence of Petitioner's actions during an escape attempt involving six death row inmates in 1984 (discussed *infra* at 1429);

3) did not perform adequate pretrial investigation of mitigation evidence (discussed *infra* at 1430);

4) failed to develop and use psychiatric evidence (discussed *infra* at 1431);

5) failed to put on mitigating evidence that had been promised to the jury by the defense in opening statements (discussed *infra* at 1432);

6) failed to object to the presentation of evidence concerning defendant's unconstitutional second degree murder conviction (discussed *infra* at 1432); and,

7) failed to raise and thereby preserve the presently claimed errors (discussed *infra* at 1414–27).

B. That Virginia's capital murder statutory sentencing mechanism has resulted in arbitrary and discriminatory application of the death penalty based upon the offender and victims' race, gender, and financial statuses, so that Petitioner's death sentence was imposed in violation of his rights under the Eighth and Fourteenth Amendments (discussed *infra* at 1417).

C. That the collateral review of his death sentence afforded Petitioner by the Virginia courts was so "shallow and shameful" as to be in violation of his rights under the Eighth and Fourteenth Amendments (discussed *infra* at 1432).

D. That the prosecution used information received from Petitioner's counsel during post-conviction hearings on the original sentence in violation of the attorney-client privilege, and therefore his Fifth Amendment right against self-incrimination, his Sixth Amendment right to counsel, and his Fourteenth Amendment right to due process, which combine to make his death sentence in violation of the Eighth and Fourteenth Amendments (discussed *infra* at 1433).

E. That the court-appointed mental health expert provided to evaluate Petitioner for purposes of mitigation failed to provide competent assistance (discussed *infra* at 1418).

F. That the scope of proportionality review provided by the Virginia Supreme

Court is constitutionally inadequate generally, as well as in this case (discussed *infra* at 1419).

G. That juror Samuel Lambert should have been struck for cause, because his voir dire revealed he could not refrain from allowing the prior death penalty from affecting his consideration (discussed *infra* at 1434).

H. That the Virginia Capital Sentencing Statute, Va.Code Ann. § 19.2–264.2 (Michie 1990), is unconstitutional on its face and as applied in violation of the Eighth Amendment (discussed *infra* at 1420).

I. That jury instructions were biased toward imposition of the death penalty (discussed *infra* at 1435).

J. That the trial court failed to instruct the jury adequately concerning aggravating and mitigating circumstances in violation of the Eighth and Fourteenth Amendments (discussed *infra* at 1421).

K. That the trial court erred by permitting the jury to impose the death penalty based upon a finding that his conduct was "outrageously or wantonly vile, horrible or inhuman," because the evidence was insufficient to support such a finding (discussed *infra* at 1423).

L. That the trial court improperly excluded evidence or instructions concerning Petitioner's remote chance of parole if given a life sentence, thereby unreasonably interfering with his right to present mitigation evidence (discussed *infra* at 1437).

M. That the trial court improperly removed for cause two jurors whose answers during voir dire concerning inability to apply the death penalty did not sufficiently demonstrate an inability to serve on the jury (discussed *infra* at 1424).

N. That application of Va.Code Ann. § 19.2–264.3(C) (Michie 1990) to Petitioner's case was in violation of the United States Constitution's *ex post facto* clause (discussed *infra* at 1437).

O. That the Commonwealth of Virginia improperly introduced as aggravating evidence an unconstitutional prior conviction. for second degree murder (discussed *infra* at 1425).

P. That Petitioner was excluded from critical stages of his resentencing proceeding in violation of his Sixth, Eighth, and Fourteenth Amendment rights under the United States Constitution (discussed *infra* at 1426).

## IV. DISCUSSION AND APPLICATION OF LAW.

### A. *Claims Procedurally Barred From Being Pursued.*

1. Legal Framework.

 The Commonwealth has asserted that many claims set forth by Petitioner are barred from review on procedural grounds. Therefore, before this Court can consider the merits of Petitioner's asserted grounds for relief, it is necessary to discuss the framework by which habeas corpus claims may be barred from the review of a federal court, and whether any of Petitioner's claims are in fact barred.

The United States Supreme Court has long held that where a state court judgment rests on a state-law ground that is both independent of the merits of the federal claim, and serves as an adequate basis for that judgment, a federal court cannot consider the merits of the federal claim because this would amount to an advisory opinion in violation of Article III of the United States Constitution. *See Coleman v. Thompson,* —— U.S. ——, ——, 111 S.Ct. 2546, 2553–54, 115 L.Ed.2d 640 (1991); *Harris v. Reed,* 489 U.S. 255, 262, 109 S.Ct. 1038, 1042–43, 103 L.Ed.2d 308 (1989); *Murdock v. City of Memphis,* 87 U.S. (20 Wall.) 590, 22 L.Ed. 429 (1875). This proposition applies to state court judgments on direct review before the Supreme Court, and more importantly for these purposes, to state court judgments challenged in federal habeas corpus proceedings pursuant to 28 U.S.C. § 2254 (1988). *Harris,* 489 U.S. at 262, 109 S.Ct. at 1042–43. Furthermore, the independent and adequate state ground doctrine may be based either upon substantive state law, *or* upon a violation of state procedural rules. *Id.* at 261, 109 S.Ct. at 1042.

■ The question thus arises as to when a state procedural ground is both "independent" and "adequate." A state procedural law is "independent" for these purposes if it does not depend upon a federal constitutional ruling. *Ake v. Oklahoma,* 470 U.S. 68, 75, 105 S.Ct. 1087, 1092, 84 L.Ed.2d 53 (1985). A state procedural ground is "adequate" where the procedural rule is followed strictly or regularly by the courts of that state, *see Johnson v. Mississippi,* 486 U.S. 578, 587, 108 S.Ct. 1981, 1987, 100 L.Ed.2d 575 (1988), so long as the State has a legitimate interest in enforcing the procedural rule. *Michigan v. Tyler,* 436 U.S. 499, 512 n. 7, 98 S.Ct. 1942, 1951 n. 7, 56 L.Ed.2d 486 (1978); *Wainwright v. Sykes,* 433 U.S. 72, 83 n. 8, 97 S.Ct. 2497, 2504 n. 8, 53 L.Ed.2d 594 (1977).

■ Finally, for a state procedural ground to bar review, the state court must actually have relied on the procedural bar as an independent basis for its disposition of the case, and its opinion must contain a "plain statement" to this effect. *Harris,* 489 U.S. at 261, 109 S.Ct. at 1042. Thus, where a state court gives a plain statement expressly and unambiguously holding a habeas corpus claim barred on independent and adequate state procedural grounds, that claim will also be barred from review by the federal court. *Harris,* 489 U.S. at 262, 109 S.Ct. at 1042–43; *Bassette v. Thompson,* 915 F.2d 932, 935–37 (4th Cir. 1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1639, 113 L.Ed.2d 734 (1991); *Justus v. Murray,* 897 F.2d 709 (4th Cir.1990); *De-Long v. Thompson,* 790 F.Supp. 594, 600–01 (E.D.Va.1991). Therefore a federal court ordinarily must dismiss those claims expressly barred by the highest state court on procedural grounds. *Coleman,* —— U.S. at ——, 111 S.Ct. at 2553–57; *Bassette,* 915 F.2d at 935–37; *Pruett v. Thompson,* 771 F.Supp. 1428, 1437 (E.D.Va.1991).

■ The Court turns first to the question of whether there has been a plain statement by the Virginia Supreme Court to the effect that some of Petitioner's claims are barred on state procedural grounds. In its order upholding the trial court's denial of habeas corpus dated April 30, 1991, the Virginia Supreme Court stated "the petition for appeal is denied for reasons of procedural default." *Turner v. Williams,* No. 901335 (Va. April 30, 1991). The Court finds this statement to be a sufficiently clear or plain statement of procedural default.

■ Turning to the issue of whether the procedural ground asserted is independent and adequate, the Virginia high court stated in its letter that the procedural rule defined in *Slayton v. Parrigan,* 215 Va. 27, 205 S.E.2d 680 (1974), *cert. denied sub nom. Parrigan v. Paderick,* 419 U.S. 1108, 95 S.Ct. 780, 42 L.Ed.2d 804 (1975), barred review of Petitioner's claims listed above in Part III as (B), (E), (F), (H), (J), (K), (M), (O), and (P). *Slayton* stands for the proposition that under Virginia law, a state habeas petition may not be used to review a claim of error in collateral proceedings that could have been, but was not, raised on direct appeal. *Slayton* does not rely upon federal law for its conclusion, and is therefore "independent." Likewise, it serves a legitimate state interest and has been enforced strictly by the Virginia courts, as has been recognized continually by the federal courts, and is thus "adequate." *See Smith v. Murray,* 477 U.S. 527, 533–39, 106 S.Ct. 2661, 2665–69, 91 L.Ed.2d 434 (1986) (applying *Slayton* as a legitimate bar to a defaulted claim); *Poyner v. Murray,* 964 F.2d 1404, 1423 (4th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 419, 121 L.Ed.2d 342 (1992); *Bunch v. Thompson,* 949 F.2d 1354, 1362–63 (4th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 3056, 120 L.Ed.2d 922 (1992); *Epperly v. Booker,* 235 Va. 35, 366 S.E.2d 62, 66–67 (1988). Thus, because there is a plain statement by the Virginia court that claims (B), (E), (F), (H), (J), (K),[10] (M), (O), and (P) are barred on an independent and adequate state procedural ground, those claims will be barred from review by this Court, unless default of

10. For reasons discussed herein, the Court will reach the merits of this claim. *See infra* at 1423–24.

those claims is excused, which is the next subject the Court must undertake.[11]

### 2. Exceptions for Claims Otherwise Barred.

#### a. Cause and Prejudice.

■ Two exceptions exist to the rule that a federal court cannot review a habeas corpus claim defaulted on the basis of an independent and adequate state ground. The first is that a petitioner will be excused where he can show "just cause" for the state procedural default, and "prejudice" resulting therefrom.[12] *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Bassette*, 915 F.2d at 937. In the context of procedural default, the Supreme Court purposefully has refrained from defining what constitutes "just cause," recognizing there is a "broad range of potential reasons for an attorney's failure to comply with a procedural rule, and [a] virtually limitless array of contexts in which a procedural default can occur." *Reed v. Ross*, 468 U.S. 1, 13, 104 S.Ct. 2901, 2909, 82 L.Ed.2d 1 (1984). The Court stresses that

> [u]nderlying the concept of cause, however, is at least the dual notion that, absent

exceptional circumstances, a defendant is bound by the tactical decisions of competent counsel, and that defense counsel may not flout state procedures and then turn around and seek refuge in federal court from the consequences of such conduct.

*Id.* (citations omitted). As the Court explained in *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986),

> we discern no inequity in requiring [the petitioner] to bear the risk of attorney error that results in a procedural default. Instead, we think that the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.

Nevertheless, the Court in *Murray* was careful to point out that "[i]neffective assistance of counsel ... is cause for a procedural default." *Id.* at 488, 106 S.Ct. at 2645.

■ Turner asserts here, as he did during state collateral proceedings, that to the

---

**11.** The Virginia court alternately found that claims (B), (F), (H), (J), and (K) were also barred by the rule stated in *Hawks v. Cox*, 211 Va. 91, 175 S.E.2d 271 (1970), which stands for the proposition that issues raised and resolved against the petitioner during the direct appeal process may not again be raised as grounds for collateral review. This would appear to result in a conflicted holding, because either Petitioner's claims were raised and dealt with on direct appeal so that they would be barred from collateral review under *Hawks*, or they were not raised on direct appeal, so that they could not then be raised for collateral review under *Slayton*.

This same argument was addressed before this Court in *Pruett v. Thompson*, 771 F.Supp. 1428, 1438–39 (E.D.Va.1991). This Court held there that these could merely be considered alternate holdings, and that they were therefore not in conflict. All that is necessary for an order to qualify as a "plain statement" under *Harris*, so that the order qualifies as a state procedural default barring further federal review, is that the "order show[ ] precisely how the Court dealt with the petition for appeal." *Coleman v. Thompson*, 895 F.2d 139, 143 (4th Cir.1990), aff'd, — U.S. —, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). The Virginia Supreme

Court's order here sufficiently satisfies this criteria. The April 30, 1991, order plainly states that "the petition for appeal is denied for reasons of procedural default."

This Court noted in *Pruett*, and apparently the Commonwealth of Virginia conceded this point in that case, that *Hawks* in fact cannot operate as a procedural bar preventing federal habeas corpus review. *Pruett*, 771 F.Supp. at 1438 n. 6. ("the *Hawks* rule does not bar this Court from considering those portions of petitioner's claims raised on direct appeal and at each level of the collateral proceeding"). Indeed, this would seemingly foreclose the opportunity for *any* collateral review.

Thus, because the *Hawks* rule is not necessary in this case, this opinion will rest its holding on the point of procedural bar solely on the assertion by the Virginia Supreme Court that the claims listed were barred on state procedural grounds under *Slayton*. *Hawks* is irrelevant for these purposes, as *Slayton* alone is adequate.

**12.** The second ground for excusing a petitioner from default on procedural grounds is where enforcement of the default would result in a fundamental miscarriage of justice, because of a petitioner's "actual innocence." This aspect is discussed *infra* at 1428.

extent any of his claims have been default-ed, this is the result of ineffective assis-tance of counsel. Thus, before any of Tur-ner's claims can be held to have been de-faulted, this Court must find that *each* allegedly defaulted claim did not occur as a result of ineffective assistance of counsel.[13]

#### i. Strickland Standard for Ineffective Assistance of Counsel.

Generally under 28 U.S.C. § 2254(d) (1988), factual determinations made by state courts are presumed correct. State court findings as to ineffective assis-tance of counsel, however, are mixed ques-tions of law and fact, and are therefore not entitled to the same presumption. Thus, a state court finding "that counsel rendered effective assistance is not a finding of fact binding on the federal court to the extent stated by [§ 2254(d)]." *Strickland v. Washington*, 466 U.S. 668, 698, 104 S.Ct. 2052, 2070, 80 L.Ed.2d 674 (1984); *see also Clozza v. Murray*, 913 F.2d 1092, 1100 (4th Cir.1990) (accord), *cert. denied*, — U.S. ——, 111 S.Ct. 1123, 113 L.Ed.2d 231 (1991). Nevertheless, so far "as the state court's findings of historical fact bear on the question, they are presumed to be cor-rect under the statute." *Clozza*, 913 F.2d at 1100. Thus, in reviewing this claim, the "Court must individually analyze each inef-fective assistance of counsel claim and reach its own conclusion of law." *DeLong v. Thompson*, 790 F.Supp. 594, 601 (E.D.Va.1991). It should be stressed, how-ever, that there is no requirement that this Court hold an evidentiary hearing on the claimed ineffective assistance of counsel in order to resolve this matter. *Poyner v. Murray*, 964 F.2d 1404, 1421 (4th Cir.) (not-ing that no evidentiary hearing is required where petitioner "would not be entitled to relief on ineffective assistance grounds even if the facts were as he alleges"), *cert.*

*denied*, —— U.S. ——, 113 S.Ct. 419, 121 L.Ed.2d 342 (1992).

To state a claim for ineffective assis-tance of counsel under *Strickland*,[14] the petitioner must satisfy a two-pronged test. He must first show "counsel's performance was deficient" by "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. To do this, "the defendant must show that counsel's representation fell be-low an objective standard of reasonable-ness." *Id.* Furthermore, "[j]udicial scruti-ny of counsel's performance must be high-ly deferential.... [T]he defendant must overcome the presumption that, under the circumstances, the challenged action 'might by considered sound trial strategy.'" *Id.* at 689, 104 S.Ct. at 2065 (citation omitted). Thus, the Court expressly has cautioned against "Monday-morning-quarterbacking" by federal courts when reviewing a trial attorney's choices, stating that "[a] fair assessment of attorney performance re-quires that every effort be made to elimi-nate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.*

Even if the first prong focusing on rea-sonably competent performance is satis-fied, the petitioner must also show he was in fact prejudiced by counsel's deficient representation. *Id.* at 693, 104 S.Ct. at 2067. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the re-sult of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confi-dence in the outcome." *Id.* at 694, 104 S.Ct. at 2068.

---

**13.** This Court notes that any claim defaulted upon as a result of attorney error in the state collateral process cannot serve as "cause," be-cause there is no right to counsel, effective or otherwise, during the collateral review process. *Coleman v. Thompson*, — U.S. ——, ——, 111 S.Ct. 2546, 2566–68, 115 L.Ed.2d 640 (1991).

**14.** The *Strickland* standard has been held to apply both to the actions of trial as well as appellate counsel. *Smith v. Murray*, 477 U.S. 527, 535–36, 106 S.Ct. 2661, 2667, 91 L.Ed.2d 434 (1986); *Griffin v. Aiken*, 775 F.2d 1226, 1235–36 (4th Cir.1985), *cert. denied*, 478 U.S. 1007, 106 S.Ct. 3301, 92 L.Ed.2d 715 (1986).

It is important for the Court to identify the specific nature of counsel's actions asserted to have been "ineffective" in this context. As will be recalled, the claims have been declared defaulted by the Virginia Supreme Court under the rule in *Slayton*. In other words, counsel is claimed to have been ineffective by failing to raise certain arguments on direct appeal, resulting in default of those arguments for purposes of collateral review. Thus, under *Strickland*, Petitioner must first show that failure to raise those arguments on appeal falls below an objective standard of reasonableness.[15]

In examining whether the decision to forgo certain claims on appeal was reasonable, this Court is mindful of *Jones v. Barnes*, 463 U.S. 745, 746, 103 S.Ct. 3308, 3310, 77 L.Ed.2d 987 (1983), where the Supreme Court examined "whether defense counsel assigned to prosecute an appeal from a criminal conviction has a constitutional duty to raise every nonfrivolous issue requested by the defendant." In answering this question negatively, the Court observed that

> [e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues. Justice Jackson, after observing appellate advocates for many years, stated:

> "One of the first tests of a discriminating advocate is to select the question, or questions, that he will present orally. Legal contentions, like the currency, depreciate through over-issue. The mind of an appellate judge is habitually receptive to the suggestion that a lower court committed an error. But receptiveness declines as the number of assigned errors increases. Multiplicity hints at lack of confidence in any one.... [E]xperience on the bench convinces me that multiplying assignments of error will dilute and weaken a good case and will not save a bad one." Jackson, Advocacy Before the United States Supreme Court, 25 Temple L.Q. 115, 119 (1951).... A brief that raises every colorable issue runs the risk of burying good arguments ... in a verbal mound made up of strong and weak contentions.... [*Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967)] recognized that the role of the advocate "requires that he support his client's appeal to the best of his ability...." For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the very goal of vigorous and effective advocacy that underlies *Anders*. Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id.* at 751–54, 103 S.Ct. at 3313–14 (citations omitted).[16]

---

**15.** In reality, this process forces the Court to assess the merits of each defaulted claim, in order to determine whether counsel's decision to forgo the claim on appeal was reasonable, and whether that decision actually would have changed the outcome of the appeal. Although this would appear to allow a defendant to make arguments under the Sixth Amendment otherwise barred on their merits, this is what the Supreme Court has declared a defendant is entitled to; namely, a constitutionally competent counsel who properly argues the defendant's case on appeal. *See Kimmelman v. Morrison*, 477 U.S. 365, 379–83 & n. 7, 106 S.Ct. 2574, 2585–87 & n. 7, 91 L.Ed.2d 305 (1986).

This creates an interesting paradox for federal courts when reviewing habeas corpus claims, in light of the fact that it is now common practice for habeas petitioners to assert cursorily, as Turner has here, that any claims barred for reasons of procedural default are the result of

ineffective assistance. In order to determine whether the claim has been procedurally defaulted so that the Court would be precluded from reaching the claim's merits, the Court must first examine the merits, to determine whether that claim has been reasonably defaulted.

**16.** The Court goes on in footnote seven to caution that it was not deciding the question of whether refusal to raise a requested claim could serve as "cause" to excuse a defaulted habeas corpus claim. *Barnes*, 463 U.S. at 754 n. 7, 103 S.Ct. at 3314 n. 7. As was discussed above, the Supreme Court has since answered that question affirmatively in *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). The holding in *Murray*, however, does not in any way detract from the Supreme Court's observations in *Barnes* as to what makes an appeal effective, and that counsel's decision to forgo

The Court is also mindful of *Evans v. Thompson*, 881 F.2d 117, 124 (4th Cir. 1989), *cert. denied*, 497 U.S. 1010, 110 S.Ct. 3255, 111 L.Ed.2d 764 (1990), where the Fourth Circuit stated that when challenging trial or appellate counsels' effectiveness, Petitioner must "overcome the strong presumption that counsel's performance was reasonable." It is "sound trial strategy" for appellate counsel to "determine[ ] what he believe[s] to be petitioner's most viable arguments and raise[ ] them on appeal." *Id.*

 *Barnes* and *Evans* make it clear a reasonable attorney can choose to forgo arguing a claim, even though that claim might have some chance of success, and even though the failure to present the claim will result in default. *Barnes* goes so far as to make it clear that in the views of the Supreme Court and other experts on appellate litigation, a constitutionally competent attorney will choose not to argue claims that on their face have some merit, if those arguments would detract from the defendant's strongest points. *Strickland* says this Court cannot second-guess counsel as to his prioritization of claims for appeal. Therefore, in examining the reasonableness of counsel's actions in discarding certain claims on appeal, resulting in their potential default, this Court must weigh counsel's decisions in light of *Strickland*'s caution that

> [j]udicial scrutiny of counsel's performance must be highly deferential.... [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

*Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065 (citations omitted).

Even if the showing of unreasonableness is successful, under *Strickland* the petitioner must still demonstrate resulting harm. In this context, where Petitioner alleges he has been harmed because of counsel's failure to raise points on appeal, resulting in their procedural default, the Court cites the Supreme Court's reasoning in *Kimmelman v. Morrison*, 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986). In *Kimmelman*, the Supreme Court was presented with a defendant who claimed ineffective assistance because his counsel failed to litigate a Fourth Amendment claim, resulting in that claim's default. There the Court said

> [w]here defense counsel's failure to litigate a ... claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his ... claim is meritorious and that there is a reasonable probability that the verdict would have been different....

*Id.* at 375, 106 S.Ct. at 2583.

 Therefore, in order for Petitioner to show harm under *Strickland* and *Kimmelman* in this context, he must show the forsaken ground for appeal is meritorious, and that there is a reasonable probability that had counsel raised it, Petitioner's death sentence would have been reversed.

ii. Claim of Alleged Bias Resulting from Race, Gender, and Economic Status.

 Having described the analytic framework, the Court now proceeds to an examination of potentially defaulted claims. In claim (B), Petitioner argues the Virginia death penalty statute is biased in terms of race,[17] gender, and economic status. In *McCleskey v. Kemp*, 481 U.S. 279, 291, 107 S.Ct. 1756, 1766, 95 L.Ed.2d 262 (1987), which was extent when Petitioner's counsel was formulating his arguments for direct appeal, the Supreme Court rejected a defendant's claim that the death penalty was

colorable claims, even over a defendant's request, may be not only constitutionally reasonable, but desirable.

**17.** It appears that the issue of racial bias was raised properly on appeal, and therefore this claim could not be barred under the rule in

*Slayton. See Turner II*, 364 S.E.2d at 490. This is, however, of no help to the Petitioner, as the issue must still be decided against him on the merits, and therefore his petition on this basis is denied. *See McCleskey v. Kemp*, 481 U.S. 279, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987).

unconstitutional because statistical studies showed "persons who murder whites are more likely to be sentenced to death than person who murder blacks, and black murderers are more likely to be sentenced to death than white murderers."

In rejecting the claim, the Court observed that

> the claim that [the death] sentence rests on the irrelevant factor of race easily could be extended to apply to claims based on unexplained discrepancies that correlate to membership in other minority groups, and even to gender.... Also, there is no logical reason that such a claim need be limited to racial or sexual bias. If arbitrary and capricious punishment is the touchstone under the Eighth Amendment, such a claim could—at least in theory—be based upon any arbitrary variable, such as the defendant's facial characteristics, or the physical attractiveness of the defendant or the victim, that some statistical study indicates may be influential in jury decisionmaking. As these examples illustrate, there is no limiting principle to the type of challenge brought by McCleskey. The Constitution does not require that a State eliminate any demonstrable disparity that correlates with a potentially irrelevant factor in order to operate a criminal justice system that includes capital punishment.

*Id.* at 315–19, 107 S.Ct. at 1779–81.

Therefore, *McCleskey* cannot be limited solely to studies based on race. The Court's reasoning clearly would extend to a rejection of similar studies based upon gender or financial status. Thus, in light of *McCleskey*, it was entirely reasonable in the *Strickland* sense for Petitioner's counsel to forgo arguments based upon gender or financial status, as those arguments had no chance of succeeding, and would serve only to detract from stronger arguments. Furthermore, even if counsel should have raised these points, Petitioner was not prejudiced, because the issue clearly would have been decided against him under

*McCleskey*. Because Petitioner has failed to meet the standard of *Strickland,* the actions of counsel in failing to raise this issue cannot serve as cause to excuse the procedural bar, and thus the claim remains procedurally beyond the reach of this Court under *Harris v. Reed,* 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989).[18]

### iii. Claimed Ineffective Assistance of Court Appointed Mental Health Expert.

In claim (E), Petitioner asserts that the mental health expert appointed to evaluate him for mitigation purposes, Dr. Brad Fisher, provided incompetent assistance. In *Ake v. Oklahoma,* 470 U.S. 68, 83–87, 105 S.Ct. 1087, 1096–98, 84 L.Ed.2d 53 (1985), the Supreme Court held that a capital defendant has the right to an examination by a psychiatrist for the sentencing phase when the State plans to present psychiatric evidence of the defendant's future dangerousness. At the time Petitioner's counsel was formulating arguments for appeal, the Virginia Supreme Court had interpreted *Ake* to mean that where the Commonwealth did *not* present psychiatric evidence of future dangerousness at sentencing, then the accused would *not* have a right to a court-appointed psychiatrist. *Pruett v. Commonwealth,* 232 Va. 266, 351 S.E.2d 1, 7 n. 3 (1986), *cert. denied,* 482 U.S. 931, 107 S.Ct. 3220, 96 L.Ed.2d 706 (1987).

A review of the transcript shows the Commonwealth did not present any psychiatric evidence concerning Petitioner's future dangerousness, and as was noted previously, the defense rested without putting on a case. Therefore, a reasonable attorney under *Strickland* could have determined that to appeal on the basis of Dr. Fisher's performance would have been futile in two respects. First, the Virginia Supreme Court following *Pruett* would have said that because the Commonwealth had not introduced psychiatric evidence on future dangerousness, Petitioner had no right to a psychiatrist, competent or other-

---

**18.** As an alternative to the holding that Petitioner's claim is procedurally barred, this Court would nevertheless rule against Petitioner on the merits. *McCleskey,* 481 U.S. at 315–19, 107 S.Ct. at 1779–81; *Briley v. Booker,* 746 F.2d 225, 227 (4th Cir.1984).

wise. Second, in the view of a reasonable attorney, the Virginia Court might also have found any failure by Dr. Fisher to have been harmless error, because the jury convicted solely on the basis of "vileness," and Dr. Fisher's testimony would not have detracted from the factual vileness of Petitioner's crime. For these same reasons, even if counsel should have raised the issue of Dr. Fisher on appeal, that failure did not prejudice Petitioner because it would not have resulted in a reversal. Therefore, because counsel's failure to raise the issue of Dr. Fisher on appeal was not ineffective or prejudicial under *Strickland*, Petitioner has failed to show cause for excusing default of this issue due to his attorney's failure to raise it on direct appeal, and it remains barred from review by this Court.[19]

iv. Claimed Unconstitutionality of Virginia's Proportionality Review.

■ Petitioner's claim (F) alleges that Virginia's proportionality review, mandated under Va.Code Ann. § 17–110.1(C) (Michie 1992),[20] is constitutionally inadequate. Petitioner wishes to argue the statutory review scheme is unconstitutional because it fails to require comparison of his case with other cases where a life imprisonment sentence was imposed.

■ At the time Petitioner's counsel was formulating his appeal, it was the rule in Virginia, and has continued to be, that the required comparison is whether " 'juries in [Virginia] generally approve the supreme penalty for comparable or similar crimes.' " *Townes v. Commonwealth*, 234 Va. 307, 362 S.E.2d 650, 668 (1987) (quoting

*Stamper v. Commonwealth*, 220 Va. 260, 257 S.E.2d 808, 824 (1979), *cert. denied*, 445 U.S. 972, 100 S.Ct. 1666, 64 L.Ed.2d 249 (1980)), *cert. denied*, 485 U.S. 971, 108 S.Ct. 1249, 99 L.Ed.2d 447 (1988); *see also Stamper*, 257 S.E.2d at 824 ("The test is not whether a jury may have declined to recommend the death penalty in a particular case but whether generally juries in [Virginia] impose the death sentence for conduct similar to that of the defendant."); *King v. Commonwealth*, 243 Va. 353, 416 S.E.2d 669, 679 (accord), *cert. denied*, —— U.S. ——, 113 S.Ct. 417, 121 L.Ed.2d 340 (1992). Thus, the Virginia Supreme Court interprets the statute to require only a comparison with death sentence cases, rather than also requiring comparison with life imprisonment cases.

■ In *Pulley v. Harris*, 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984), the United States Supreme Court held that a state's capital sentencing procedure may be constitutional despite the fact that the state does not require any so-called proportionality review whatsoever. Given that proportionality review is not constitutionally required, it cannot be argued that Virginia's scheme is unconstitutional simply because the relevant comparison has been limited to death cases. Indeed, this is how the rule had been consistently interpreted by the Virginia Court at the time of Petitioner's appeal. Therefore, Petitioner's counsel was not unreasonable for failing to raise this argument, as it would have been a weak argument at best. Additionally, Petitioner was not prejudiced by counsel's failure to raise the argument, as it most likely would have been decided against him. Therefore Petitioner's claim remains procedurally barred from review by this Court,

---

19. As an alternative to the finding that this claim is procedurally barred from review, this Court would also rule against Petitioner on the merits of the claim. *See Waye v. Murray*, 884 F.2d 765, 767 (4th Cir.1989) ("To inaugurate a constitutional or procedural rule of an ineffective expert witness in lieu of the constitutional standard of an ineffective attorney, we think, is going further than the federal procedural demands of a fair trial and the constitution require."); *Pruett v. Thompson*, 771 F.Supp. 1428, 1442 (E.D.Va.1991) (claimed denial of competent psychiatric evaluation is without legal merit).

20. The statute provides in pertinent part that the court shall consider and determine:

1. Whether the sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor; and

2. Whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.

Va.Code Ann. § 17–110.1(C) (Michie 1992).

as he has failed to show the required cause and prejudice for excusing that bar based upon his appellate counsel's alleged incompetence.[21]

### v. Virginia Capital Statute's Alleged Vagueness and Overbreadth.

Claim (H),[22] which is Petitioner's next potentially defaulted claim, alleges that Va.Code Ann. 19.2–264.2 (Michie 1992),[23] is unconstitutional on its face and as applied because of vagueness and overbreadth. At the time of Petitioner's direct appeal, this challenge consistently had been rejected by the Virginia Supreme Court. *See, e.g., Gray v. Commonwealth,* 233 Va. 313, 356 S.E.2d 157 *cert. denied,* 484 U.S. 873, 108 S.Ct. 207, 98 L.Ed.2d 158 (1987); *Evan v. Commonwealth,* 222 Va. 766, 284 S.E.2d 816 (1981), *cert. denied,* 455 U.S. 1038, 102 S.Ct. 1741, 72 L.Ed.2d 155 (1982); *Briley v. Commonwealth,* 221 Va. 563, 273 S.E.2d 57 (1980); *Smith v. Common-*

*wealth,* 219 Va. 455, 248 S.E.2d 135, 148 (1978), *cert. denied,* 441 U.S. 967, 99 S.Ct. 2419, 60 L.Ed.2d 1074 (1979). Indeed, the Virginia court has continued to reject such challenges. *See, e.g., Mueller v. Commonwealth,* 244 Va. 386, 422 S.E.2d 380, 385 (1992).

In light of the Virginia Supreme Court's consistent rejection of Petitioner's challenges to the statutory scheme, it was not unreasonable for his counsel to forgo such arguments in formulating issues for appeal, as such arguments were weak, and would have detracted from other stronger arguments. Furthermore, there could be no prejudice resulting from waiver of these arguments, as they would have been resolved against Petitioner even if raised. Thus, Petitioner has again failed to show cause or prejudice based on his appellate counsel's performance, and this claim remains procedurally barred from review.[24]

**21.** Alternatively, the Court would nevertheless resolve Petitioner's claim against him on the merits, given that the Constitution does not require *any* proportionality review, much less the kind that Petitioner would prefer. *See Pulley v. Harris,* 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984); *Clozza v. Murray,* 913 F.2d 1092, 1105 (4th Cir.1990) ("we doubt that the claim has even colorable merit as facially stated"), *cert. denied,* — U.S. —, 111 S.Ct. 1123, 113 L.Ed.2d 231 (1991); *Peterson v. Murray,* 904 F.2d 882, 887 (4th Cir.), *cert. denied,* 498 U.S. 992, 111 S.Ct. 537, 112 L.Ed.2d 547 (1990).

**22.** It may be that this claim at least in part is not procedurally barred under *Slayton,* in that several vagueness arguments were made by the Petitioner, and resolved against him, on direct appeal. *See Turner,* 364 S.E.2d at 488. The Commonwealth concedes that arguments previously made are not barred, but that any new arguments Petitioner attempted to assert were those barred by the Virginia Supreme Court under *Slayton.* To the extent that the claim should be reviewed by this Court, the claim nevertheless is resolved against the Petitioner on the merits. *See infra* note 24.

**23.** The relevant portion of the statute is quoted *infra* at 1428–29.

**24.** As with Petitioner's other procedurally defaulted claims, the Court alternatively finds against him on the merits. *See Lewis v. Jeffers,* 497 U.S. 764, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990) (a state appellate court may rely upon an adequate narrowing construction of the assert-

edly vague factor in order to cure the error of vagueness); *Bunch v. Thompson,* 949 F.2d 1354, 1367 (4th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 3056, 120 L.Ed.2d 922 (1992); *Jones v. Murray,* 947 F.2d 1106, 1116–19 (4th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 1591, 118 L.Ed.2d 308 (1992); *Clozza v. Murray,* 913 F.2d 1092, 1105 (4th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 1123, 113 L.Ed.2d 231 (1991); *Giarratano v. Procunier,* 891 F.2d 483, 489–90 (4th Cir.1989), *cert. denied,* 498 U.S. 881, 111 S.Ct. 222, 112 L.Ed.2d 178 (1990); *Turner v. Bass,* 753 F.2d 342, 350–53 (4th Cir.1985), *rev'd on other grounds sub nom. Turner v. Murray,* 476 U.S. 28, 106 S.Ct. 1683, 90 L.Ed.2d 27 (1986); *Briley v. Bass,* 750 F.2d 1238, 1245 (4th Cir.1984), *cert. denied,* 470 U.S. 1088, 105 S.Ct. 1855, 85 L.Ed.2d 152 (1985).

Petitioner cites to the recent case of *Richmond v. Lewis,* — U.S. —, 113 S.Ct. 528, 121 L.Ed.2d 411 (1992), where the Supreme Court addressed similar vagueness concerns in Arizona's statutory scheme. Contrary to Petitioner's view, *Richmond* is of no help to him. Although the Court did observe that the " 'especially heinous, cruel or depraved' " language employed by the Arizona statute was unconstitutionally vague on its face, the Court nevertheless noted that a facially vague statute can be cured when given an adequate narrowing construction. *Id.* at —, 113 S.Ct. at 534 (quoting Ariz. Rev.Stat.Ann. § 13–703(F)(6) (1989), and citing *Lewis v. Jeffers,* 497 U.S. 764, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990)). Because the Virginia statute has been adequately narrowed, it survives this constitutional challenge, and *Richmond* is inapposite. *See Jones,* 947 F.2d at 1117 (noting

vi. Claim Regarding Allegedly Problematic Jury Instructions on Aggravating Circumstances and Mitigating Evidence.

■ In claim (J), Petitioner asserts that the trial court failed to instruct the jury adequately concerning aggravating circumstances and use of mitigating evidence. Specifically, Petitioner seeks to challenge (i) the adequacy of instructions relating to vileness and aggravated battery;[25] (ii) the instruction offered concerning "depravity of mind";[26] (iii) the failure to instruct the jury concerning the definition, use, and function of mitigating evidence;[27] and finally, (iv) the court's failure to instruct jurors that the existence and consideration of mitigating factors need not be unanimous.

At the time Petitioner's counsel was formulating arguments for appeal, the Virginia Supreme Court had already addressed the concerns raised by (i) and (ii) above in *Smith v. Commonwealth*, 219 Va. 455, 248 S.E.2d 135, 148–49 (1978), *cert. denied*, 441 U.S. 967, 99 S.Ct. 2419, 60 L.Ed.2d 1074 (1979). There the Virginia high court had defined "vileness," "aggravated battery," and "depravity of mind" almost exactly as the trial court did in the complained of instructions. *Id.* at 149. At the time of Petitioner's direct appeal, the *Smith* reasoning or similar instructions had received the Virginia Supreme Court's continual support. *See, e.g., Wise v. Common-wealth*, 230 Va. 322, 337 S.E.2d 715, 723 (1985), *cert. denied*, 475 U.S. 1112, 106 S.Ct. 1524, 89 L.Ed.2d 921 (1986); *Boggs v. Commonwealth*, 229 Va. 501, 331 S.E.2d 407, 421–22 (Va.1985), *cert. denied*, 475 U.S. 1031, 106 S.Ct. 1240, 89 L.Ed.2d 347 (1986); *Poyner v. Commonwealth*, 229 Va. 401, 329 S.E.2d 815, 831–33 *cert. denied*, 474 U.S. 865, 106 S.Ct. 189, 88 L.Ed.2d 158 (1985); *Edmonds v. Commonwealth*, 329 S.E.2d 807, 814 (Va.), *cert. denied*, 474 U.S. 975, 106 S.Ct. 339, 88 L.Ed.2d 324 (1985); *Jones v. Commonwealth*, 228 Va. 427, 323 S.E.2d 554, 564–66 (1984), *cert. denied*, 472 U.S. 1012, 105 S.Ct. 2713, 86 L.Ed.2d 728 (1985); *Stockton v. Commonwealth*, 227 Va. 124, 314 S.E.2d 371, 386 *cert. denied*, 469 U.S. 873, 105 S.Ct. 229, 83 L.Ed.2d 158 (1984); *Bunch v. Commonwealth*, 225 Va. 423, 304 S.E.2d 271, 281–85 & nn. 2–3, *cert. denied*, 464 U.S. 977, 104 S.Ct. 414, 78 L.Ed.2d 352 (1983); *LeVasseur v. Commonwealth*, 225 Va. 564, 304 S.E.2d 644, 659 (1983), *cert. denied*, 464 U.S. 1063, 104 S.Ct. 744, 79 L.Ed.2d 202 (1984); *Briley v. Commonwealth*, 221 Va. 563, 273 S.E.2d 57, 65–67 (1980).

Based upon the overwhelming rejection by the Virginia Supreme Court of arguments concerning instructions or definitions relating to the phrases "vileness," "aggravated battery," and "depravity of mind," Petitioner's counsel was reasonable not to make the now proffered arguments, in that these relatively weak arguments would have further detracted from the

---

that the Virginia statute has been given the appropriate limiting constructions and citing cases).

**25.** As to vileness, the jury was instructed in pertinent part that

[b]efore the penalty can be fixed at death, the Commonwealth must prove beyond a reasonable doubt ... (2) That his conduct in committing the offense was outrageously or wantonly vile, horrible or inhuman, in that it involved depravity of mind or aggravated battery to the victim.

*Turner II*, Jury Instruction No. 1. Aggravated battery was defined as "a battery which qualitatively and quantitatively is more culpable than the minimum necessary to accomplish an act of murder." *Turner II*, Jury Instruction No. 10.

**26.** Depravity of mind was defined as "a degree of moral turpitude and [ ] psychical debasement surpassing that inherent in the definition of ordinary legal debasement and premeditation." *Turner II*, Jury Instruction No. 11.

**27.** The jury was instructed

that in determining whether to sentence Willie Turner to life imprisonment in the penitentiary or to death, you shall consider the circumstances surrounding the offense, the history and background of Willie Turner, and any other facts of the offense. You should consider those characteristics of the defendant which may be considered as extenuating or reducing the degree of moral culpability or blame and which therefore may call for the imposition of a punishment less than death.

strength of his appeal.[28]

Furthermore, based upon the Virginia Supreme Court's continual reliance on *Smith,* and instructions comporting with it, Petitioner cannot be said to have been prejudiced by his counsel's failure to raise these arguments on appeal, as there is no chance the outcome would have been different. *See Mueller v. Commonwealth,* 244 Va. 386, 422 S.E.2d 380, 385, 395–96 (1992); *Thomas v. Commonwealth,* 244 Va. 1, 419 S.E.2d 606, 619–20, *cert. denied,* — U.S. ——, 113 S.Ct. 421, 121 L.Ed.2d 343 (1992); *Davidson v. Commonwealth,* 244 Va. 129, 419 S.E.2d 656, 659–60 *cert. denied,* — U.S. ——, 113 S.Ct. 423, 121 L.Ed.2d 345 (1992); *Barnes v. Commonwealth,* 234 Va. 130, 360 S.E.2d 196, 201–02 (1987), *cert. denied,* 484 U.S. 1036, 108 S.Ct. 763, 98 L.Ed.2d 779 (1988).

■ It can also be observed that based upon Virginia and United States Supreme Court precedent at the time of the direct appeal, Petitioner's counsel was also reasonable for declining to raise patently weak arguments concerning the instruction given on mitigating evidence, because arguments of this type consistently had been rejected and would have weakened the rest of the appeal. Petitioner was likewise not preju-

diced, as seen by rejection of such arguments in subsequent holdings, so that even had the arguments been raised, a reversal on this basis would have had a remote chance at best.[29]

■ Finally, as to Petitioner's argument that there should have been an instruction stating that unanimity was unnecessary for mitigating factors, at the time of Petitioner's appeal this argument had been rejected by the Virginia Supreme court. *See Clark v. Commonwealth,* 220 Va. 201, 257 S.E.2d 784, 791 (1979) ("Such an instruction is unnecessary and would have been confusing."), *cert. denied,* 444 U.S. 1049, 100 S.Ct. 741, 62 L.Ed.2d 736 (1980). Thus, counsel was reasonable for failing to argue a point already rejected. Furthermore, there was no prejudice to Petitioner for counsel's failure, in that the argument would not have been successful. *See Gray v. Commonwealth,* 233 Va. 313, 356 S.E.2d 157, 178, *cert. denied,* 484 U.S. 873, 108 S.Ct. 207, 98 L.Ed.2d 158 (1987).

Therefore, because Petitioner has failed to show either cause or prejudice based upon his appellate counsel's choices in formulating the appeal, these claims remain barred from review by this Court on procedural grounds.[30]

---

*Turner II,* Jury Instruction No. 7.

**28.** It is apparent that counsel did in fact raise other arguments concerning these phrases and instructions, *see Turner,* 364 S.E.2d at 488–90, which shows that appellate counsel did address these terms, and made what he reasonably believed were his strongest objections. Under *Strickland,* the Court cannot second-guess these reasonable choices.

**29.** *See Zant v. Stephens,* 462 U.S. 862, 873–80, 890, 103 S.Ct. 2733, 2741–44, 2750, 77 L.Ed.2d 235 (1983) (the Constitution does not require a State to adopt specific standards for instructing the jury in its consideration of aggravating and mitigating circumstances); *Mueller,* 422 S.E.2d at 396–97; *Yeatts v. Commonwealth,* 242 Va. 121, 410 S.E.2d 254, 268 (1991) (it is assumed that the jury follows instruction to consider mitigating evidence), *cert. denied,* — U.S. ——, 112 S.Ct. 1500, 117 L.Ed.2d 639 (1992); *Mackall v. Commonwealth,* 236 Va. 240, 372 S.E.2d 759, 770 (1988) (trial court need not offer instruction singling out mitigation evidence for special emphasis, or stating that a mitigating circumstance need not be proven beyond reasonable doubt), *cert. denied,* 492 U.S. 925, 109 S.Ct. 3261, 106

L.Ed.2d 607 (1989); *Watkins v. Commonwealth,* 229 Va. 469, 331 S.E.2d 422, 438 (1985), *cert. denied* 475 U.S. 1099, 106 S.Ct. 1503, 89 L.Ed.2d 903 (1986); *LeVasseur,* 304 S.E.2d at 660–61 & n. 5 (same as *Mackall* ); *Waye v. Commonwealth,* 219 Va. 683, 251 S.E.2d 202, 212 (1979) (leaving discretion with the jury in how to consider and weigh mitigating and aggravating factors is not unconstitutional), *cert. denied,* 442 U.S. 924, 99 S.Ct. 2850, 61 L.Ed.2d 292 (1979).

**30.** As with Petitioner's other procedurally defaulted claims, the Court alternatively decides against the Petitioner on the merits when reviewing the jury instructions as a whole, and finding the instructions to be constitutionally sufficient based upon the cases addressing these arguments. *See Blystone v. Pennsylvania,* 494 U.S. 299, 110 S.Ct. 1078, 108 L.Ed.2d 255 (1990) (upholding Pennsylvania death penalty system against similar challenges); *Franklin v. Lynaugh,* 487 U.S. 164, 108 S.Ct. 2320, 101 L.Ed.2d 155 (1988) (upholding Texas death sentence against similar challenges); *Zant v. Stephens,* 462 U.S. 862, 873–80, 890, 103 S.Ct. 2733, 2741–44, 2750, 77 L.Ed.2d 235 (1983); *Jones v. Murray,* 947 F.2d 1106, 1116–20 (4th Cir.1991), *cert.*

vii. Claimed Insufficiency of Evidence Showing "Vileness."

■ In claim (K), Petitioner states that the trial court erred in permitting the jury to impose death based upon a finding that his conduct was "outrageously or wantonly vile, horrible or inhuman." Petitioner in essence seeks to argue that the facts of this case are insufficient to show "vileness," because the facts do not show an "aggravated battery" or "depravity of mind." Therefore, Petitioner claims it was error to instruct the jury concerning the Virginia statute's vileness component.[31]

Although Petitioner failed to raise this claim on direct appeal, it is apparent that in discussing Petitioner's vagueness claims the Virginia Supreme Court found the evidence sufficient to establish aggravated battery and depravity of mind, meeting the statutory test for "vileness." *See Turner II*, 364 S.E.2d at 488–89. Therefore, because the issues Petitioner now attempts to raise actually were reached by the state court, it does not offend comity or the principles of federalism for this Court also to reach the merits of this aspect of Petitioner's claim. *Cf. Briley v. Bass*, 750 F.2d 1238, 1242 n. 6 (4th Cir.1984) (federal court could reach the merits of a claim potentially barred on state procedural grounds where the state court actually reached the claim's merits on collateral review), *cert. denied*, 470 U.S. 1088, 105 S.Ct. 1855, 85 L.Ed.2d 152 (1985).

■ Turning then to the merits, this Court holds that based on its own independent examination of the record

the murder here was cold-blooded and calculated.... Turner initially shot Smith for no reason at all. While Smith lay alive but helpless and while Officer Bain pleaded, Turner fired two shots into Smith's chest after stating that he was going to kill him for snitching on him.... We reject Turner's contention that his crime was not so vile as to justify the imposition of death. The case fits within the constitutionally limited construction of the vileness criterion established by the Virginia Supreme Court, and we are of opinion Virginia's death penalty provisions were constitutionally applied.

*Turner v. Bass*, 753 F.2d 342, 353 (4th Cir.1985), *rev'd on other grounds sub nom. Turner v. Murray*, 476 U.S. 28, 106

*denied*, —— U.S. ——, 112 S.Ct. 1591, 118 L.Ed.2d 308 (1992); *Clozza v. Murray*, 913 F.2d 1092, 1103–05 (4th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1123, 113 L.Ed.2d 231 (1991); *Peterson v. Murray*, 904 F.2d 882, 888–89 (4th Cir.), *cert. denied*, 498 U.S. 992, 111 S.Ct. 537, 112 L.Ed.2d 547 (1990); *Boggs v. Bair*, 892 F.2d 1193, 1197 (4th Cir.1989), *cert. denied*, 495 U.S. 940, 110 S.Ct. 2193, 109 L.Ed.2d 521 (1990); *Smith v. Procunier*, 769 F.2d 170, 173–74 (4th Cir.1985), *aff'd*, 477 U.S. 527, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986); *Turner v. Bass*, 753 F.2d 342, 353 (4th Cir.1985), *rev'd on other grounds sub nom. Turner v. Murray*, 476 U.S. 28, 106 S.Ct. 1683, 90 L.Ed.2d 27 (1986); *Briley v. Bass*, 750 F.2d 1238, 1242–45 (4th Cir.1984), *cert. denied*, 470 U.S. 1088, 105 S.Ct. 1855, 85 L.Ed.2d 152 (1985).

**31.** Petitioner also makes the following claim: The *United States Supreme Court*, construing the same aggravating circumstance in *Godfrey v. Georgia*, 446 U.S. at 431 [100 S.Ct. 1759, 1766, 64 L.Ed.2d 398 (1980) ] *held that* the terms "torture," "depravity of mind" and "aggravated battery" *must be read in pari materia*, so that if there was no aggravated battery, or if the battery was not one which demonstrated depravity of mind, the death sentence could not be imposed pursuant to that aggravating criterion.

*Petition* at ¶ 319 (emphasis added).

In *Godfrey*, the United States Supreme Court was discussing whether the Georgia capital sentencing statute had been appropriately limited by the Georgia courts. In this context, the United States Supreme Court noted that the *Georgia Supreme Court* had held in *Blake v. State*, 239 Ga. 292, 236 S.E.2d 637 (1977), that "the word, 'torture,' must be construed *in pari materia* with 'aggravated battery' so as to require evidence of serious physical abuse of the victim before death." *Godfrey*, 446 U.S. at 431, 100 S.Ct. at 1766. Thus, the United States Supreme Court merely was reviewing the holdings of the Georgia Court. In no way can this opinion be construed in the way that Petitioner's counsel argues; it is *not* a holding of the United States Supreme Court, it is an observation of how the Georgia court had been construing that state's statute. There is absolutely no support for the proposition that the United States Supreme Court was requiring the rest of the states to adopt that construction, as Petitioner (or more accurately his counsel) would have this Court believe. Therefore, Petitioner's claim on this basis is meritless.

**1424**

S.Ct. 1683, 90 L.Ed.2d 27 (1986).[32] Accordingly, this portion of Petitioner's claim is denied on the merits.

### viii. Claimed Error in Exclusion of Jurors.

■ Returning to an examination of claims potentially barred on procedural grounds unless Petitioner can establish cause due to ineffective assistance of counsel, in claim (M), Petitioner seeks to argue that jurors Deborah Calhoun and Delphine Freeman were removed from the panel improperly. At the time Petitioner's counsel was formulating arguments for appeal, the law was (and is) that a juror could not be excluded merely because of conscientious scruples over capital punishment unless that "juror's views would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instruction and his oath.'" *Wainwright v. Witt*, 469 U.S. 412, 424, 105 S.Ct. 844, 852, 83 L.Ed.2d 841 (1985) (quoting *Adams v. Texas*, 448 U.S. 38, 45, 100 S.Ct. 2521, 2526, 65 L.Ed.2d 581 (1980), and expanding on the Court's previous holding in *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968)). The Supreme Court stressed, however, that "there will be situations where the trial judge is left with the definite impression that a prospective juror would be unable to faithfully and impartially apply the law," so that "this is why deference must be paid to the trial judge who sees and hears the juror." *Id.* at 425–26, 105 S.Ct. at 853.

Thus, in keeping with this observation, the Virginia Supreme Court had held at the time of Petitioner's direct appeal, and has continued to hold, that the determination of whether a juror can be stricken for cause is committed to the trial judge's sound discretion, and would not be reversed but for manifest error. *Waye v. Commonwealth*, 219 Va. 683, 251 S.E.2d 202, 206, *cert. denied*, 442 U.S. 924, 99 S.Ct. 2850, 61 L.Ed.2d 292 (1979); *George v. Common-*

*wealth*, 242 Va. 264, 411 S.E.2d 12, 19 (1991) (showing continued deference to trial judge's determinations as to a juror's qualifications), *cert. denied*, —— U.S. ——, 112 S.Ct. 1591, 118 L.Ed.2d 308 (1992); *see also Boggs v. Commonwealth*, 229 Va. 501, 331 S.E.2d 407, 418 (1985) (in reviewing a juror's answers on voir dire, the "entire *voir dire* rather than the single question and answer" must be examined), *cert. denied*, 475 U.S. 1031, 106 S.Ct. 1240, 89 L.Ed.2d 347 (1986); *Poyner v. Commonwealth*, 229 Va. 401, 329 S.E.2d 815, 824–26 (discussing Virginia application of the juror exclusion standard), *cert. denied*, 474 U.S. 865, 106 S.Ct. 189, 88 L.Ed.2d 158 (1985); *LeVasseur v. Commonwealth*, 225 Va. 564, 304 S.E.2d 644, 650 (1983), *cert. denied*, 464 U.S. 1063, 104 S.Ct. 744, 79 L.Ed.2d 202 (1984).

In order to determine whether counsel was reasonable in deciding not to appeal exclusion of jurors Calhoun and Freeman, the Court must examine the record confronting counsel. When Ms. Calhoun was asked "if the evidence is sufficient to justify the death penalty, can you vote for it," she responded "No, sir ... I just don't believe in giving the death penalty." When asked whether she could "think of a circumstance under which [she] would give the death penalty," she answered "No, sir." When Snook attempted to rehabilitate her on cross, he asked her if, after hearing all the evidence and receiving the judge's instructions on the law, she could "see any circumstances under which [she] might come back with a verdict of death," to which she again answered "No," whereupon the court excused her. *Transcript I,* supra note 2, at 194–96.

Mrs. Freeman similarly was asked, "In a given case in which the evidence does justify that a sentence of death be imposed, can you say I send that man to the electric chair," to which she replied "No, I

---

**32.** Although the Court repeats the language of the Fourth Circuit in finding that Petitioner's crime meets the Virginia test for vileness, this should not be construed to imply that the Court is simply adopting the prior holding. As is made clear by the length of this opinion, and frequent citations to the record, the Court has conducted a thorough and independent examination of the record, and concludes on that basis that because the facts of Petitioner's crime remain unchanged, they still support a finding of vileness.

couldn't." When asked if that was "an absolute belief," she responded "Yes." When Snook attempted to rehabilitate her, he asked if she "would be able if the facts justified it, to come back with a verdict of death," to which she again stated "No, I wouldn't, you know." Snook then said, "Not under any circumstances," to which she responded "No," and was excused. *Id.* at 151–54.

Given these colloquies, counsel reasonably could have determined there was little to no chance of making a winning argument on appeal concerning exclusion of these jurors. Both jurors agreed they could not think of *any* circumstance under which they would impose the death penalty, which easily supports exclusion under the *Witherspoon/Witt* standard. In addition, counsel also reasonably could have concluded his best argument over jury selection concerned juror Samuel Lambert,[33] so that raising relatively weak arguments regarding jurors Calhoun and Freeman would only detract from the strength of that argument.

■ In addition, given the statements of these jurors coupled with the applicable highly deferential standard of review, Petitioner was not prejudiced by counsel's failure to raise this argument on appeal, as it most certainly would have been decided against him. Therefore, this Court holds that Petitioner has failed to meet the standard under *Strickland* concerning his appellate counsel's failure to raise this point on direct appeal, and thus he has failed to show cause for excusing the procedural bar. Accordingly, this Court cannot reach the merits of this claim, as the procedural bar remains in force.[34]

### ix. Claim Regarding Evidence of an Unconstitutional Prior Conviction.

■ Petitioner's next claim potentially defaulted on procedural grounds due to counsel's failure to raise the issue on appeal is claim (O), which states that improper evidence of an unconstitutional prior conviction was allowed to be presented. As part of its case, the Commonwealth did indeed present evidence that on March 21, 1974, Petitioner was convicted in Powhatan Circuit Court of second degree murder. *Transcript I,* supra note 2, at 234, 374–75. The trial for this murder, the killing of a fellow inmate by Turner while he was also incarcerated, occurred within Powhatan Correctional Center, a procedure later declared unconstitutional by the Virginia courts as a violation of the defendant's right to a public trial. *See Vescuso v. Commonwealth,* 5 Va.App. 59, 360 S.E.2d 547 (1987) (en banc).

*Vescuso* was decided on September 15, 1987. *Id.* Yet Petitioner's resentencing trial ended on January 12, 1987. At the time of trial, as well as for the period during which counsel would have been formulating arguments for appeal, the law in Virginia was *Dammerau v. Commonwealth,* 3 Va.App. 285, 349 S.E.2d 409 (1986), which had upheld a trial staged within the confines of a correctional center. Although it is certainly a closer question given that *Dammerau* ultimately was reversed, this Court finds that under the deferential standard of *Strickland,* counsel was not unreasonable for failing to raise an argument for appeal that had existing pre-

---

33. *See infra* at 1434–35.

34. Alternatively, the Court holds that Petitioner's claim on this ground must be denied on its merits. In addition to the reasoning discussed in the text in the context of appellate counsel's decision, the Court further observes that in the context of a habeas corpus petition filed under 28 U.S.C. § 2254(d), the trial judge's determination is presumed correct where there is fair support in the record, and this presumption applies to decisions by the trial court as to which jurors should be stricken. *Wainwright v. Witt,* 469 U.S. at 426–35, 105 S.Ct. at 853–58;

*Briley v. Bass,* 750 F.2d at 1246–47 (citing *Patton v. Yount,* 467 U.S. 1025, 1036–40, 104 S.Ct. 2885, 2891–93, 81 L.Ed.2d 847 (1984)).

The record here more than supports the trial judge's determination to excuse these jurors for cause under the *Witherspoon/Witt* standard. Both jurors made it clear that under no circumstance would they be able to impose the death penalty. Even if the trial judge were entitled to no deference whatsoever, the record standing alone supports the exclusion of these jurors under the *Witherspoon/Witt* criteria, and Petitioner's claim must fail.

cedent standing solidly against it. Counsel reasonably could have surmised, given that the Virginia Supreme Court had indicated no displeasure with the *Dammerau* holding by the Virginia Court of Appeals, that the argument presented little chance of success, and would have weakened the appeal by detracting [35] from relatively stronger arguments. Although it is apparent to this Court that a credible argument can be made to the effect that counsel might have gambled the other way, this is the type of second-guessing which *Strickland* prohibits. Therefore, because this Court finds that counsel's failure to raise this argument was constitutionally reasonable, Petitioner has failed to show cause for excus-

ing the resulting procedural bar. Accordingly, this Court cannot review the claim on its merits, and Petitioner's claim on this ground is denied.

### x. Claim of Unconstitutional Exclusion from Various Stages of Resentencing.

■ The final claim potentially barred from review on procedural grounds is claim (P), where Petitioner alleges he was excluded from critical stages of resentencing. The factual basis of this claim stems from Petitioner's absence from certain pretrial proceedings occurring on September 11,[36] November 12,[37] November 25,[38] and December 10 [39] of 1986, as well as from vari-

---

**35.** Raising this argument, as with all of the arguments not raised on appeal, would have detracted from Petitioner's appeal in at least two ways, either of which would serve as a reasonable consideration under *Strickland* for counsel's decision to forego them. First, the time that counsel would have had to invest in researching and preparing this argument for appeal would certainly have been substantial, in light of the existing precedent against it. This necessarily would have channeled counsel's limited resources away from other arguments he could have reasonably felt were more worthy of his efforts, particularly because of the limited amount of time he had to formulate his grounds for appeal. Second, counsel could also have surmised that the chances for reversal on this ground were so remote, that raising the issue for the Supreme Court would only have served to distract them both at oral argument and in reviewing the briefs from arguments having a better chance of succeeding.

**36.** The issues addressed at this conference included argument on whether the defendant was entitled to a life sentence based upon various legal arguments that the Virginia statute was unconstitutional, *see Commonwealth v. Turner*, No. 870554, Tr. at 1–16 (Southampton County Cir.Ct. Sept. 11, 1986); discussions involving discovery and scheduling for pretrial procedures, *id.* at 17–29; granting of defendant's motion for the appointment of mental health expert Dr. Brad Fisher, *id.* at 29–43; and discussion of defendant's motion for a change of venue, which was taken under advisement by the court, and ultimately granted. *Id.* at 43–49.

**37.** The issues addressed at this conference included discovery issues, *see Commonwealth v. Turner*, No. 870554, Tr. at 1–19 (Southampton County Cir.Ct. Nov. 12, 1986); and a general discussion relating to Turner's status as a death row inmate. It should be noted that the court did not take any evidence at this hearing, and

did not exclude any evidence. The court and counsel merely observed that because of the nature of the evidence, it would not be possible to keep the jury from learning of the fact that Turner had been on death row. There was *no* ruling on admissibility made. *See id.* at 20–24.

**38.** The issues addressed during this pretrial conference were related to discovery and the defense's stipulation that the Commonwealth would not need *to* call a record keeper when presenting record of a prior conviction in Massachusetts, *see Commonwealth v. Turner*, No. 870554, Tr. at 109 (Southampton County Cir.Ct. Nov.25, 1986); a discussion as to whether the Commonwealth would need to take further action regarding the bill of particulars, *see id.* at 9–15; the granting of defendant's motion for a private investigator, limited solely to the investigation of prospective jurors, *see id.* at 15–17; the provisional granting of defendant's request for a copy of the Commonwealth's mental health expert's report, *if* an examination was made anytime before trial, *id.* at 18–20; the granting of defendant's request for a pre-trial instruction to prospective jurors informing them of Petitioner's prior death sentence, *see id.* at 20–26; clarification of voir dire procedure and trial procedure, *id.* at 27–28; and discussion of the need for a further conference and clarification of other procedures, *see id.* at 28–30.

**39.** At this conference the parties discussed problems with the report of the defense's mental health expert, agreeing that if he subsequently made any diagnosis that the Commonwealth would be entitled to a copy of his report at that time, *see Commonwealth v. Turner*, No. 870554, Tr. at 1–29 (Southampton County Cir.Ct. Dec. 10, 1986); and the granting of the Commonwealth's motion for an order requiring the defendant to submit to a mental examination by state doctors. *Id.* at 29–34.

ous hearings and conferences during trial on January 9 [40] and 12,[41] 1987.

At the time of his appeal, the case law in Virginia concerning a prisoner's Sixth Amendment right to be present, as well as his parallel state right under Va.Code Ann. § 19.2–259 (Michie 1992), was that

> one tried for a felony has the right to be personally present during the trial.... Generally stated, the rule is that he must be present on his arraignment, when any evidence is given or excluded, when the jury is charged, when the trial court wishes to communicate with the jury in answering questions by them, and when the jury receives further instructions.

*Palmer v. Commonwealth,* 143 Va. 592, 130 S.E. 398, 402 (1925); *see also Quintana v. Commonwealth,* 224 Va. 127, 295 S.E.2d 643, 652 (1982) (quoting *Palmer*), *cert. denied,* 460 U.S. 1029, 103 S.Ct. 1280, 75 L.Ed.2d 501 (1983).

The right to be present was not construed, however, to extend under Virginia law to a conference held in chambers five days before trial on the defendant's motion for a Spanish-speaking psychiatrist. *See Quintana,* 224 Va. 127, 295 S.E.2d at 652. Nor did it extend to a conference in chambers on "a purely legal question" concerning admissibility of evidence, where the official ruling on admissibility "was actually made in open court in [the defendant's] presence and objections and exceptions there taken" so that "[n]othing was done in the absence of the accused that could affect his interest." *Williams v. Commonwealth,* 188 Va. 583, 50 S.E.2d 407, 411 (1948).

Furthermore, the Virginia Court had held this right could be waived if, during the trial, evidence taken in violation of the

right was introduced by the defendant's counsel while the defendant was present, with the defendant failing to object at that time. *Bilokur v. Commonwealth,* 221 Va. 467, 270 S.E.2d 747, 751–52 (1980); *see also Jones v. Commonwealth,* 227 Va. 425, 317 S.E.2d 482 (1984) (waiver of right to be present when jury viewed scene found where defendant expressly declined to attend); *Quintana,* 295 S.E.2d at 651–52 (right to be present at trial can be waived by persistent disruptive conduct).

 Under *Strickland,* counsel reasonably could have concluded that under Virginia case law the defendant's presence was not required during any of the complained of discussions. No evidence was taken, and none was excluded. Other matters involved purely legal issues. Nothing took place that under *Palmer, Williams,* or *Quintana* would have required Petitioner's presence. Therefore counsel reasonably could have concluded that because this argument had little to no chance of success before the Virginia Supreme Court, to raise the argument would only weaken the appeal, and detract from more meritorious arguments. Similarly, in view of the relevant case law it cannot be said that Petitioner was prejudiced by counsel's failure to raise this argument. Thus, failure to appeal on this ground falls within the scope of reasonableness required under *Strickland.* Accordingly, because Petitioner has failed to show that counsel's performance was deficient in this regard, or that there was resulting prejudice, he has failed to show cause for relief from the resulting procedural bar, and the Court remains prohibited from reviewing the claim on the merits.[42]

---

**40.** *See Transcript I,* supra note 2, at 434–37 for the record of what took place during this conference. The issue was related solely to whether the Court would allow the defendant to present the expert testimony of a psychologist from Mecklenburg named Dr. George. The Court stated that the witness would be allowed to testify, but that the Commonwealth would be permitted discovery of her records if she did.

**41.** *See Transcript I,* supra note 2, at 454–65 for the record of this discussion. Defense counsel had asked for an in camera conference in order

to discuss the scope of rebuttal that the Commonwealth would be allowed if the defense put on its case. The court expressly stated that it was not making a ruling on the scope of the rebuttal, and that it could not do so until the evidence was actually taken in court. *Id.* at 460, 463.

**42.** Alternatively, the Court would hold that the Petitioner had no constitutional right to be present at any of these proceedings, or that to the extent that any existed, it was waived by Petitioner's failure to object.

### b. Fundamental Miscarriage of Justice Based Upon Actual Innocence.

■ In addition to being excused from procedural default based on a showing of cause and prejudice, Petitioner will also be excused where failure to consider the claim would result in a " 'fundamental miscarriage of justice.' " *Harris v. Reed*, 489 U.S. 255, 262, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989); *Murray v. Carrier*, 477 U.S. 478, 496, 106 S.Ct. 2639, 2649–50, 91 L.Ed.2d 397 (1986) (quoting *Engle v. Isaac*, 456 U.S. 107, 135, 102 S.Ct. 1558, 1576, 71 L.Ed.2d 783 (1982)). An example of this exists where the petitioner alleges that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496, 106 S.Ct. at 2649.[43]

■ Actual innocence in the context of the death penalty can also refer to the concept that despite the defendant's unquestioned guilt of the underlying crime, as in this case, he may be nevertheless actually innocent of the death penalty. *Sawyer v. Whitley*, —— U.S. ——, ——, 112 S.Ct. 2514, 2521, 120 L.Ed.2d 269 (1992); *Murray*, 477 U.S. at 538, 106 S.Ct. at 2668. The Supreme Court has held that to show "actual innocence" in this context, Petitioner "must show by clear and convincing evidence that but for a constitutional error, no reasonable juror would have found the petitioner eligible for the death penalty under the applicable state law." *Sawyer v. Whitley*, —— U.S. at ——, 112 S.Ct. at 2517. This exception is, however, a narrow one, and "must focus on those elements which render a defendant eligible for the death penalty, *and not on additional mitigating evidence which was prevented from being introduced as a result of a claimed constitutional error.*" *Id.* at ——, 112 S.Ct. at 2523 (emphasis added).

■ The Court holds that Petitioner has failed to meet this standard, and thus he has failed to show existence of a fundamental miscarriage of justice that would allow the Court to reach the claim's merits. This Court finds a reasonable juror could sentence Petitioner to death based solely upon evidence received at the guilt phase of his trial, relating to the commission of the crime. None of the alleged constitutional errors defaulted upon by Petitioner significantly detract from the crime's brutality. None of the alleged errors show clearly and convincingly that but for such error, no reasonable juror would have sentenced the petitioner to death based solely upon the vile nature of the crime alone.

Thus, in accordance with the discussion above, and the plain unambiguous statement by the Virginia Supreme Court that the claims listed were defaulted on state procedural grounds, for reasons previously given these claims are barred from review by this Court under *Harris v. Reed*, 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989), with the exception of claim (K) which is denied on its merits. The Court next turns its consideration to the remaining seven claims not defaulted on, namely (A), (C), (D), (G), (I), (L), and (N).

### B. Remaining Ineffective Assistance of Counsel Claims.[44]

■ Before turning to a discussion of Petitioner's claims, the Court first wishes to stress that the Virginia Death Sentence Statute allows *two* alternate grounds upon which a sentence of death may be premised. *See* Va.Code Ann. § 19.2–264.2 (Michie 1990). The fact finder may impose death because *either*

there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing serious threat to society [ ("future dangerousness") ] *or* that his conduct in commit-

---

**43.** The Court notes in passing that there is no claim of actual innocence in terms of the underlying factual allegations against the Petitioner, and thus the Court is not dealing with the potentially problematic situation presented where someone sentenced to death presents a belated claim of being actually innocent of having committed the crime for which they were sentenced.

*See Herrera v. Collins*, —— U.S. ——, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993), *aff'g* 954 F.2d 1029 (5th Cir.1991).

**44.** For the standard to be applied to ineffective assistance of counsel claims, see the discussion of *Strickland, supra* at 1414–18.

ting the offense for which he stands charged was outrageously or wantonly vile, horrible or inhuman in that it involved torture, depravity of mind or an aggravated battery to the victim [ ("vileness") ].

*Id.* (emphasis added). It is important to note the disjunctive, meaning that *both* prongs need not be satisfied in order to impose death.

In Petitioner's case, the jury imposed the death penalty *only* on the vileness clause, having crossed out the portion of the verdict form addressing future dangerousness. *Record,* supra note 7, at 137. Because many of Petitioner's alleged ineffective assistance claims relate only to rebutting future dangerousness, and the jury did not sentence on this ground, such claims are of no help to Petitioner because he clearly was not prejudiced by any failure on the part of his attorney to rebut evidence of future dangerousness.

1. Informing Jurors of Prior Death Sentence.

 Turning now to the specific claims, Petitioner first maintains that his counsel improperly permitted prospective jurors in *Turner II* to know about the death sentence he had received in *Turner I.* As Petitioner admits, his counsel became aware early on that he would need to think of a way to deal with the prior death sentence. *Petition* at ¶ 38. Counsel was concerned jurors would learn of the prior sentence from the fact that Petitioner was involved in two death row escape attempts in 1984 and 1985, because counsel knew that the prosecution intended to use these facts in rebuttal. *Id.; see also supra* note 6 and accompanying text.

Additionally, there was a concern that even without references to death row, jurors would deduce that Turner previously had been sentenced to death, based solely upon the case's status. Jurors would know Petitioner had already been convicted in 1979, and that the issue of guilt was not before them. They would know their job was to choose between a life and death sentence. From these facts alone, they could easily reach the conclusion that Petitioner previously had been sentenced to death, because no one sentenced to life would return to the jury to give them another chance to find for death. Thus, counsel elected to inform the jury of the prior sentence. Although other lawyers may disagree, it can be argued this was a sound strategy in that it made defense counsel appear totally forthcoming to the jury, at the limited expense of informing them of something they would very likely figure out on their own. It also gave counsel an opportunity to gauge jurors for any prejudice resulting from this knowledge during voir dire, so that any problematic jurors could be stricken. This is exactly the type of strategic choice *Strickland* requires to be made by the trial attorney, and not by a federal court and other critics years later. Therefore, this Court holds counsel was not ineffective in this regard as a matter of law, as the decision was entirely reasonable.

2. Failure to Put on Evidence Relating to Behavior During Escape Attempt.

 Petitioner is next heard to complain that his counsel was constitutionally deficient for deciding not to introduce for mitigation purposes evidence of Petitioner's actions during an escape attempt involving six death row inmates in 1984 at Mecklenburg Correctional Center. It is Petitioner's contention the evidence would have revealed he was generally helpful in maintaining calm during the incident, *Petition* at ¶¶ 56–62, and that he even persuaded an inmate not to rape a nurse who was being held hostage. *Id.* at ¶ 61. As Petitioner concedes, his attorney chose not to introduce mitigation evidence based on a concern that the prosecution's rebuttal evidence ultimately could have resulted in making the issue more damaging than helpful. *Id.* at ¶¶ 46, 54; *see also supra* note 6 and accompanying text.

Again, this is a strategic decision by counsel that *Strickland* says is owed deference by this Court. Furthermore, even if counsel was deficient in weighing the relative merits of evidence available to both

sides, there was no prejudice to Petitioner in failing to introduce this mitigating evidence, because it was relevant only to the issue of future dangerousness. Therefore, because counsel's decision at trial arguably was correct as a matter of trial strategy, and Petitioner was not prejudiced by the decision, Petitioner has failed to establish a claim under *Strickland* based on his counsel's failure to present evidence regarding the Mecklenburg escape attempts.

### 3. Failure to Perform Adequate Pretrial Investigation.

■ Petitioner next faults his counsel for failing to perform adequate pretrial investigation of mitigation evidence. This Court first observes that the historical facts as found by the state court are presumed correct under 28 U.S.C. § 2254 (1988). In the transcript from the state habeas petition hearing held before Southampton County Circuit Court Judge Godwin from September 11–13, 1989, Petitioner's counsel Snook observed that he spent approximately 1,000 hours on Petitioner's case during the eight years he represented Turner, and a "couple of hundred hours" in preparation for resentencing. *Transcript II*, supra note 5, at 166–67. He spoke with Turner on the phone approximately fifty times, and in person eight to ten times. *Id.* at 167. He had lectured to various groups on dealing with death penalty cases, and considered himself knowledgeable on the subjects of the investigation and presentation of mitigating evidence. *Id.* at 165. Furthermore, in preparation for resentencing, Snook reviewed all of Petitioner's state correctional records (*id.* at 171, 201); he had his secretary/paralegal review records and prepare a chronology of mitigating events from Petitioner's life (*id.* at 75); interviewed by phone potential mitigation witnesses, including Petitioner's friends and family members (*id.* at 105–09); he personally interviewed Petitioner's sister, Esmon Thompson, on three to four occasions (*id.* at 188–89, 200); and he had substantive conversations concerning the petitioner with Petitioner's uncle, James Peeples (*id.* at 201). Based on the record in this case, it is clear that Petitioner's counsel conscientiously pursued numerous sources of mitigating evidence. Therefore Petitioner's claim more precisely asserts that his counsel did not do enough, or the right kind, of investigation of mitigating evidence.

The Fourth Circuit recently commented on a habeas petitioner's claim that his counsel might have done a better job in investigating. In *Williams v. Dixon*, 961 F.2d 448, 451 (4th Cir.), *cert. denied,* — U.S. ——, 113 S.Ct. 510, 121 L.Ed.2d 445 (1992), the court observed:

> After careful review of the record, we agree that Williams' attorney could have perhaps investigated the facts of the case more thoroughly and with more diligence. However, we cannot conclude that his conduct was unreasonable without engaging in excessive second-guessing, which we refuse to do. Moreover, in light of the evidence, we believe that the government has carried its burden of showing beyond a reasonable doubt that the verdict would not have been different even if Williams' counsel had been more diligent or had used different trial tactics.

The same reasoning applies in this instance. Although it may be, as Petitioner alleges, that his counsel might have done things differently, the record establishes that counsel did engage in an investigation that at the very least complies with the reasonableness standard prescribed by *Strickland.* To decide otherwise would require this Court to engage in extensive second-guessing, which it cannot do. Similarly, even if more investigation should have been performed, Petitioner was not prejudiced by any alleged failure, because as was discussed above, the jury based its finding solely on the vileness prong. Most of the things Petitioner suggests should have been done relate to mitigation of future dangerousness, and are thus irrelevant. Therefore, this Court holds that based upon the investigation performed by his counsel, Petitioner has failed to state a claim under *Strickland.*

#### 4. Failure to Develop and Use Psychiatric Evidence.

 Petitioner further points to his counsel's alleged failure to develop and use psychiatric evidence as proof of constitutional deficiency. Petitioner presents the opinions of Drs. Miller and Cornell, who claim that various neurological examinations should have been performed on the petitioner, and that if they had, they may have revealed various mental disorders. *Petition* at ¶¶ 109–11. The petitioner also claims that Dr. Brad Fisher, the court-appointed professor of psychology who served as Petitioner's mental health expert in *Turner II*, was "wholly inadequate." *Id.* at ¶¶ 112–20. He alleges Dr. Fisher was deficient by failing to submit an adequate report, and by failing to conduct a personal exam until January 9, 1987, two days after Petitioner's trial had started. *Id.* at 120.

Similar circumstances were presented in *Poyner v. Murray*, 964 F.2d 1404 (4th Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 419, 121 L.Ed.2d 342 (1992). There, the petitioner relied upon the affidavit of a psychiatrist in support of his contention that certain psychological tests should have been performed prior to the penalty phase of his trial. *Id.* at 1417. He alleged that his counsel's failure to develop psychiatric evidence showing that he was a serial killer amounted to ineffective assistance. *Id.* at 1418. In rejecting the claim, the court noted that the petitioner had in fact been examined by various psychiatrists, and that

> [t]he gravamen of this claim is that these psychiatrists were not experienced or imaginative enough to recognize that Poyner might have been motivated by sexual sadism ... or some other psychological disorder.... However, this court in the past has made clear that *there is no right to effective assistance of expert witnesses distinct from the right to effective assistance of counsel.* A clear overtone to the argument is the proposition that if a defense attorney has not produced a witness who would agree with the after-the-fact diagnosis presently presented, then the attorney is ineffective. We reject this proposition as we

did its corollary in *Waye v. Murray,* 884 F.2d 765 (4th Cir.1989).... [T]he constitutionally deficient performance must be that of counsel, in obtaining the psychiatric examinations or presenting the evidence at trial for example, not that of the psychiatrist ... in failing to identify every possible malady or argument, no matter how tenuous.

*Id.* at 1418–19 (emphasis added).

This discussion is particularly applicable to this case. Petitioner likewise relies upon affidavits of other psychiatrists who say that in their view, certain tests should have been performed. But as in *Poyner,* this does not avoid the fact that the petitioner and his extensive records were examined by a qualified mental health expert, who was obtained by his attorney for purposes of exploring potential psychological issues for mitigation purposes.

 As to whether Dr. Fisher was deficient, the *Poyner* court is clear that his performance is not the issue—it is the attorney's performance. Under *Strickland,* it cannot be said that counsel here fell below an objective level of competence in selecting and relying upon Dr. Fisher. Dr. Fisher had been a professor of psychology at Duke University since 1982, and had done professional work in the areas of psychological assessments of Alabama's prison population, as well as publishing over eighteen scholarly works in the field of psychology. *Record,* supra note 7, at 64–65 (Dr. Fisher's Curriculum Vitae submitted for the record in *Turner II*). Dr. Fisher personally examined Petitioner, his prison records, and records of prior evaluations that had been performed on him. *Transcript II,* supra note 5, at 89–100. Dr. Fisher was eminently qualified, and counsel's reliance upon him was reasonable. Petitioner's complaints with the quality of Dr. Fisher's examination are inapposite to the issue of effective assistance of *counsel,* as described in *Poyner.*

 In a related manner, Petitioner claims counsel was deficient for failing to use the theory developed by Dr. Fisher, namely that Petitioner's violent nature had

"burned out" so that he was no longer dangerous. *Petition* at ¶¶ 112, 120. As this again is mitigating evidence going to "future dangerousness," Petitioner was not prejudiced because the jury's finding was based solely on vileness. Furthermore, the decision to not present this evidence again falls into the category of sound trial strategy, and thus Petitioner again fails to show counsel was deficient in this manner. Therefore, Petitioner has failed to state a claim under *Strickland* based on counsel's development of psychological evidence, because counsel reasonably relied upon Dr. Fisher. Petitioner also fails to state a claim based upon counsel's failure to present evidence of Dr. Fisher's theory at trial, because not only was this a conscious strategic decision by counsel, but Petitioner was not prejudiced, as evidenced by the jury's failure to find "future dangerousness."

### 5. Failure to Present a Defense.

■ Petitioner next states his counsel was deficient for failing to put on mitigating evidence on Petitioner's behalf, even though this evidence initially had been promised to the jury by counsel in his opening statement. This claim can be dealt with keeping in mind the *Strickland* standard already discussed.

After giving the matter serious consideration and discussing it at length with co-counsel Woodward, Snook made a conscious choice not to put on any mitigating evidence on Petitioner's behalf. *Transcript II*, supra note 5, at 141–62, 414–18. Messrs. Snook and Woodward were concerned about damaging evidence the government might put on in rebuttal, they felt the jury would not be convinced by their evidence, and they thought the prosecution had rested prematurely without putting on as strong a case as it might have, presumably in anticipation of the defense's case. *Id.* In short, they felt there was more to be lost than gained by putting on mitigation evidence.

This is paradigmatic of what the Supreme Court was referring to as trial strategy in *Strickland.* Although some trial lawyers could make a cogent argument as to the negative aspects of this choice, *Strickland* stresses that the choice remains with trial counsel and not with this Court or other Monday-morning quarterbacks. Because there were strategically acceptable reasons for Snook's choice, under *Strickland* the choice remains his to have made.

### 6. Failure to Object to Evidence Regarding a Prior Conviction.

■ Petitioner further alleges his counsel was deficient for failing to object to evidence concerning Petitioner's allegedly unconstitutional second-degree murder conviction, which then allowed this evidence to be presented to the jury. Here the Court would reference its earlier discussion of this claim, *see supra* at 1425–27, and hold that under *Strickland* counsel can hardly be faulted for failing to object to admission of Petitioner's 1974 conviction based upon a case that would not be decided for some six months. It was reasonable not to object, because such an objection would have been denied under Virginia law as it stood. Therefore, this claim of ineffective assistance is denied as meritless.[45]

In summary, after reviewing the record and pleadings, and for the reasons stated, this Court finds that under the standard articulated by the Supreme Court in *Strickland,* the petitioner has failed to state a claim of ineffective assistance of counsel.

### C. *Remaining Claims.*

#### 1. Collateral Review Process Provided by Virginia.

■ The next claim advanced by the petitioner is that the collateral review of his death sentence afforded by the Virginia courts was so "shallow and shameful" as to be in violation of his rights under the Eighth and Fourteenth Amendments. Peti-

---

**45.** Petitioner's final asserted ground for ineffective assistance relates to any failure on counsel's part that resulted in default of any claims. This contention was effectively denied by the discussion *supra,* at 1414–28.

tioner's claim is based upon his view that the Circuit Court's five-page letter order was too cursory; that the Circuit Court labored under a misconception of *Strickland;* that the Circuit Court improperly balanced mitigating evidence against the petitioner; that the Circuit Court should not have adopted the findings of fact proposed by the respondent; that other claims dismissed should also have received an evidentiary hearing; and finally, that the Virginia procedural rules described in *Slayton* and *Hawks* are too onerous to provide proper review in light of the fact that many of Petitioner's claims were defaulted.[46]

It is the majority rule, as well as the settled rule in the Fourth Circuit, that "error occurring in a state post-conviction proceeding cannot serve as a basis for federal *habeas corpus* relief." *Bryant v. State of Maryland,* 848 F.2d 492, 493 (4th Cir.1988); *Kirby v. Dutton,* 794 F.2d 245, 247 (6th Cir.1986) ("the writ [of habeas corpus] is not the proper means by which prisoners should challenge errors or deficiencies in state post-conviction proceedings ... because the claims address collateral matters and not the underlying state conviction giving rise to the prisoner's incarceration"). Thus, habeas corpus cannot be used in federal court to examine a prior habeas proceeding in state court, and Petitioner's claim on this ground is without merit.

2. Conflicts Involving Attorney Woodward.

■■■■ Petitioner next claims that the prosecution used information in *Turner II* that had been received improperly from Woodward during the *Turner I* post-conviction proceedings, and that use of this information was in violation of attorney-client privilege, and therefore his rights under the Fifth, Sixth, and Fourteenth Amendments. In a related manner, Petitioner alleges that because Woodward cooperated with the prosecutor in connection with *Turner I* post-conviction proceedings, Woodward therefore had a conflict of interest

and should not have been allowed to represent the petitioner as co-counsel with Snook in *Turner II.*

Regarding the claim that information from the *Turner I* state habeas proceeding was received in violation of the petitioner's attorney-client privilege, the Court notes Va.Code Ann. § 8.01–654(B)(6) (Michie 1990), which states:

> If petitioner alleges as a ground for illegality of his detention the inadequacy of counsel, he shall be deemed to waive his privilege with respect to communications between such counsel and himself to the extent necessary to permit a full and fair hearing for the alleged ground.

The fact that following *Turner I* Woodward would turn his files over to the Commonwealth pursuant to this statute, so that the Commonwealth could effectively dispute Petitioner's claim of ineffective assistance, comes as no surprise. The statute makes it clear that no privilege existed. Similarly, any constitutional rights Petitioner may have had in communications between he and his attorney also were waived once Petitioner placed his counsel's performance at issue by claiming ineffective assistance. *See Tasby v. United States,* 504 F.2d 332, 336 (8th Cir.1974) ("when a client calls into public question the competence of his attorney, the privilege is waived"), *cert. denied,* 419 U.S. 1125, 95 S.Ct. 811, 42 L.Ed.2d 826 (1975).

■■■ As to Woodward's claimed conflict of interest, the petitioner fails to state a claim here as well. On July 31, 1986, Petitioner appeared before Judge Godwin for purposes of having counsel appointed. *Commonwealth v. Turner,* No. 870554, Tr. of Motion (Southampton County Cir. Ct. July 31, 1986). After consultation between counsel, Petitioner, and the Judge, Turner approved the appointments of Messrs. Woodward and Snook. Judge Godwin specifically had asked Turner whether he wished to have Woodward serve as co-counsel, even though Turner had previously challenged Woodward's competency.

---

**46.** As to this last contention, the Court refers to its discussion of procedural bars *supra* at 1412– 15, and particularly to footnote 11.

■ Waivers of constitutional rights, including the right to conflict free counsel, must be " 'knowingly, voluntarily, and intelligently' made and they must not be lightly inferred." *Reckmeyer v. United States,* 709 F.Supp. 680, 691 (E.D.Va.1989) (quoting *Bridges v. United States,* 794 F.2d 1189, 1193 (7th Cir.1986)), *aff'd,* 900 F.2d 257 (4th Cir.1990). In light of the fact that Petitioner was counseled by Judge Godwin as to whether he truly wished to have Woodward appointed as his counsel, and Petitioner consented, any conflict of interest that may or may not have existed was waived.

Petitioner claims his waiver was not knowing because he was unaware Woodward had turned over documents in alleged violation of the attorney-client privilege. But as stated above, Woodward did not commit any breach in releasing those documents. Therefore, Petitioner did in fact knowingly waive any perceived conflict relating to Woodward's previous representation of him, a fact of which he was well aware.

■ Furthermore, even assuming there was no waiver and an actual conflict of interest did exist as to Woodward, Petitioner was not prejudiced as a result. Under *Strickland,* 466 U.S. at 692, 104 S.Ct. at 2067 (quoting *Cuyler v. Sullivan,* 446 U.S. 335, 350, 348, 100 S.Ct. 1708, 1719, 1718, 64 L.Ed.2d 333 (1980)), prejudice to the defendant arising from an attorney's conflict of interest "is presumed only if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.' "

At the *Turner II* proceedings, Snook at all times served as lead counsel, and it is undisputed he was conflict free. The Fourth Circuit anticipated *exactly* this scenario in *Hoffman v. Leeke,* 903 F.2d 280, 287 (4th Cir.1990), where the court observed that "[t]he *Strickland* Court intimates that there may be some peripheral category of extremely unusual cases in which an actual conflict of interest adversely affecting counsel's performance may not

result in presumed prejudice." As a prescient example of such a case, the Fourth Circuit described

> a situation where a defendant, represented by co-counsel, receives effective assistance from his conflict-free counsel at all critical stages of the criminal process, while his conflicted attorney plays a subsidiary role. We suspect that some such instances may fall within the class of cases discussed by the Supreme Court in *Strickland,* where, notwithstanding an actual conflict of interest adversely affecting the attorney's performance, prejudice will not be presumed.

*Id.* at 287 n. 3. First, as was discussed at length above, the petitioner at all time received effective assistance of counsel during the *Turner II* proceedings. Second, even if some aspect of Woodward's representation in his subsidiary role was problematic due to some conflict, Snook's clearly was not. Alternatively, this Court finds that if Woodward was indeed in actual conflict, and the conflict had not been waived, that nevertheless the petitioner was not prejudiced by having Woodward serve as co-counsel, based upon the fact that Snook was clearly in charge and was at all times constitutionally effective and conflict free.

3. Retention of Juror Samuel Lambert.

■ Petitioner next claims that Juror Samuel Lambert should have been struck for cause because his voir dire revealed he could not refrain from allowing the previous institution of the death penalty from affecting his consideration.[47] The trial court questioned him on this matter, and Juror Lambert responded affirmatively that he would decide the petitioner's sentence solely on the basis of the evidence presented in court, and that he would not consider the previous sentence. *See Transcript I,* supra note 2, at 52–64.

In *Adams v. Aiken,* 965 F.2d 1306, 1317 (4th Cir.1992) (quoting *Patton v. Yount,* 467 U.S. 1025, 1036, 1038, 104 S.Ct. 2885, 2891, 2892, 81 L.Ed.2d 847 (1984) (citations

---

**47.** For the standard to be applied to the exclusion of jurors, *see supra* at 1424–25.

omitted)), the court held that under § 2254(d),

> factual findings by the state court are presumed to be correct. This presumption applies to a trial court's determination that an individual juror is impartial. The issue for the trial court is whether the juror swore "that he could set aside any opinion ... and decide the case on the evidence, and should the juror's protestation of impartiality [be] believed."

This discussion applies equally to whether Juror Lambert should have been excused. The trial judge questioned him as to whether he would ignore the previously imposed death sentence, and Mr. Lambert said he would. Judge Godwin, not this Court, had the ability to observe Mr. Lambert, and Judge Godwin did so and decided he was fit to serve. The trial court's finding on Mr. Lambert's ability to do so is, under *Adams v. Aiken* and § 2254(d), a finding of fact presumed correct, and there is nothing in the record that would overcome that presumption. Petitioner's claim on this ground is therefore denied.

4. Jury Instructions.

◼ Petitioner next alleges that the jury instructions were biased toward imposition of death. Petitioner raises a number of issues with respect to offered or refused instructions, which this Court will address *ad seriatim.* In reviewing the propriety of jury instructions, this Court keeps in mind that "a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Cupp v. Naughten,* 414 U.S. 141, 146–47, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973). Furthermore, the "burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal." *Henderson v. Kibbe,* 431 U.S. 145, 154, 97 S.Ct. 1730, 1736–37, 52 L.Ed.2d 203 (1977).

Thus, the standard is " 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process' and not merely whether the instruction is 'undesirable, erroneous, or even 'universally condemned.' ' " *Briley v. Bass,* 750 F.2d 1238, 1243 (4th Cir.1984) (quoting *Cupp,* 414 U.S. at 146, 94 S.Ct. at 400), *cert. denied,* 470 U.S. 1088, 105 S.Ct. 1855, 85 L.Ed.2d 152 (1985).

The petitioner maintains that the instruction offered failed to inform "the jury that it had the option to recommend against death even if it found the presence of aggravating circumstances and no mitigating circumstances." *Petition* at ¶ 297. The instruction offered stated in pertinent part the following:

> If you find from the evidence that the Commonwealth has proved beyond a reasonable doubt either of the two alternatives, then you may fix the punishment of the defendant at death or if you believe from all the evidence that the death penalty is not justified, then you shall fix the punishment of the defendant at life imprisonment.
>
> If the Commonwealth has failed to prove beyond a reasonable doubt either alternative, then you shall fix the punishment of the defendant at life imprisonment.

*Petition* at Exh. 2, No. 1. Petitioner asserts that the words "you may," coupled with an absence of *enough* comment on the function of mitigating circumstances could have given a juror the impression that in the absence of mitigating circumstances he should find for death. *Petition* at ¶ 297. This same contention was made concerning this same instruction in *Jones v. Murray,* 947 F.2d 1106, 1119 (4th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 2295, 119 L.Ed.2d 219 (1992). There the court upheld the instruction, expressly rejecting the argument that it "failed to inform the jury of its option to recommend life imprisonment and its obligation to consider mitigating evidence." *Id.*

It is further noted that Instruction Seven given by the trial court clearly reminds the jury of its duty to consider mitigating evidence. That instruction reads

> The Court instructs the jury that in determining whether to sentence Willie Turner to life imprisonment in the penitentiary or to death, you shall consider

the circumstances surrounding the offense, the history and background of Willie Turner, and any other facts of the offense. You should consider those characteristics of the defendant which may be considered as extenuating or reducing the degree of moral culpability or blame and which therefore may call for the imposition of a punishment less than death.

*Petition* Exh. 2, No. 7. Thus, in view of *Jones v. Murray* and examining the instructions as a whole, there is no question but that the jury was aware of its option to impose a life sentence, and its obligation to consider mitigating evidence. This Court therefore finds that the instructions as a whole were not biased toward the death penalty's imposition.

■■■■■ Petitioner also asserts the instructions were deficient for failing to inform the jury it could consider mercy or compassion when making its determination. Petitioner fails to cite any case which would require such an instruction, and this Court can find none. The instructions given adequately informed the jury of its duty to consider mitigating evidence. The Constitution does not require the state to establish specific standards for the weighing of mitigating evidence, *Clozza v. Murray*, 913 F.2d 1092, 1103 (4th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1123, 113 L.Ed.2d 231 (1991), and thus this Court will not now require that a "mercy or compassion" standard should be mandated.

■■■ Petitioner next argues that the instructions failed to "sufficiently guide the jury in its determination that the punishment of death could be imposed upon a finding that Turner's crime was 'outrageously or wantonly vile, horrible or inhuman, in that it involved depravity of mind or aggravated battery to the victim.'" *Petition* at ¶ 299. The petitioner proffered, and was denied, an instruction stating: "All willful, deliberate and premeditated murders are vile, horrible and inhuman, but not all such murders are 'outrageously or wantonly vile, horrible and inhuman.'" *Record,* supra note 7, at 118. The instruction actually offered by the court followed the statute's wording, and included the statement that the jury must find beyond a

reasonable doubt that "his conduct in committing the offense was *outrageously* or wantonly vile, horrible or inhuman, in that it involved depravity of mind or aggravated battery to the victim." *Petition* Exh. 1, No. 1. As noted above, the Fourth Circuit previously has reviewed this instruction and upheld it without the embellishment now urged by the petitioner, and it is clear from the instruction itself that the jury could not fail to understand that the conduct must be found to have been "outrageous or wanton." Therefore, the instruction given was sufficient.

■■■■ Finally, the petitioner claims the court should have instructed the jury that "Turner was entitled to a presumption of deserving life imprisonment." *Petition* at ¶ 301. The instruction actually given read as follows:

The Court instructs the jury that in this proceeding the burden is upon the Commonwealth to prove each and every fact required for imposition of the death penalty, as set forth in other instructions of this Court, by evidence so strong, so clear, and so conclusive that there is left in the minds of the jury no reasonable doubt. Where the evidence is susceptible to two interpretations, one consistent with the imposition of the death penalty, and the other with the imposition of life imprisonment, you should not adopt that interpretation which is consistent with imposition of the death penalty.

If, therefore, upon a consideration of all the evidence, there exists in your minds a reasonable doubt as to any fact or conclusion you are required to find before the death penalty may be imposed, you shall impose a sentence of life imprisonment.

*Petition* Exh. 2, No. 2. This says essentially the same thing—that the Commonwealth bore the burden of proving beyond a reasonable doubt that the death penalty was proper. The instruction given made the jury aware of the fact that if at any time the Commonwealth failed to prove beyond a reasonable doubt that the death penalty should be imposed, that they the jury *"shall* impose a sentence of life imprisonment." This is the same thing as saying a life sentence is presumed. Be-

cause Petitioner's offered instruction was simply redundant, there was no harm in failing to offer his instruction.

Therefore, for the above stated reasons as to all the jury instructions offered, and as to those refused, this Court holds that the instructions examined as a whole were constitutionally sound.

### 5. Instruction Regarding Parole.

 Petitioner next claims that the trial court improperly excluded evidence or instructions concerning Petitioner's unlikely chance of parole if given a life sentence, which he asserts interfered with his right to present mitigating evidence. The trial judge's refusal was in keeping with Virginia law, which has long held that the jury should not receive an instruction concerning parole eligibility if punishment is fixed at life imprisonment. *See Yeatts v. Commonwealth*, 242 Va. 121, 410 S.E.2d 254, 258 (1991), *cert. denied*, — U.S. —, 112 S.Ct. 1500, 117 L.Ed.2d 639 (1992); *Stamper v. Commonwealth*, 220 Va. 260, 257 S.E.2d 808, 820–21 (Va.1979), *cert. denied*, 445 U.S. 972, 100 S.Ct. 1666, 64 L.Ed.2d 249 (1980); *Hinton v. Commonwealth*, 219 Va. 492, 247 S.E.2d 704 (1978).

This same claim has been raised and rejected previously by the Fourth Circuit. *See Peterson v. Murray*, 904 F.2d 882, 886 (4th Cir.) ("we believe that [*California v. Ramos*, 463 U.S. 992, 103 S.Ct. 3446, 77 L.Ed.2d 1171 (1983)] left to the states the decision concerning what, if anything, a jury should be told about commutation, pardon, and parole"), *cert. denied*, 498 U.S. 992, 111 S.Ct. 537, 112 L.Ed.2d 547 (1990). In fact, *this* petitioner advanced this *same* claim during his first round of federal habeas appeals, and the Fourth Circuit gave him the *same* answer: "while it is constitutionally permissible to instruct the jury on the subject of parole, such an instruction is not constitutionally required." *Turner v. Bass*, 753 F.2d 342, 354 (4th Cir.1985), *rev'd on other grounds sub nom. Turner v. Murray*, 476 U.S. 28, 106 S.Ct. 1683, 90 L.Ed.2d 27 (1986). As the Fourth Circuit said in *Peterson*, 904 F.2d at 887, "[o]ur holding in *Turner* controls here." Nothing has changed in the interim, and Petitioner's claim is again denied.

### 6. Ex Post Facto Claim.

 Finally, Petitioner alleges that the application of Va.Code Ann. § 19.2–264.-3(C) (Michie 1990) was in violation of the United States Constitution's *ex post facto* clause. The Court notes the Fourth Circuit previously has considered this issue in the case of *Evans v. Thompson*, 881 F.2d 117, 119–21 (4th Cir.1989), *cert. denied*, 497 U.S. 1010, 110 S.Ct. 3255, 111 L.Ed.2d 764 (1990), and rejected the argument, which is binding upon this Court.

### V. CONCLUSION.

The Court carefully has considered each of Petitioner's claims, considered arguments of counsel, and conducted a detailed, independent examination of the state record. For the reasons discussed, the petition for habeas corpus is DENIED, and respondent's motion is GRANTED, with judgment entered in favor of respondent.